Wachtler, J.
This appeal involves a claim for workmen’s compensation benefits for the period during which the claimant was incapacitated by severe depression caused by the discovery of her immediate supervisor’s body after he had committed suicide.
The facts as adduced at a hearing before the Workmen’s Compensation Board are uncontroverted. The claimant, Mrs. Diana Wolfe, began her employment with the respondent department store, Sibley, Lindsay & Curr Co. in February, 1968. After working for some time as an investigator in the security department of the store she became secretary to Mr. *507 John Gorman, the security director. It appears from the record that as head of security, Mr. Gorman was subjected to intense pressure, especially during the Christmas holidays. Mrs. Wolfe testified that throughout the several years she worked at Sibley’s, Mr. Gorman reacted to this holiday pressure by becoming extremely agitated and nervous. She noted, however, that this anxiety usually disappeared when the holiday season was over. Unfortunately, Mr. Gorman’s nervous condition failed to abate after the 1970 holidays.
The record indicates that Mr. Gorman remained agitated and "physically shakey” throughout the early part of 1971. According to Mrs. Wolfe, he was deeply concerned about his job performance and doubted his ability to measure up. These fears were exacerbated by the firing of a colleague in a neighboring department store. In reaction Mr. Gorman became more and more withdrawn and relied very heavily on Mrs. Wolfe who became his confidante on this subject and his "right hand” as to work matters. As he became more reclusive he began briefing her on details of the department functions so that she could handle more and varied situations. Mrs. Wolfe accepted this role and endeavored to ease his burden by assuming certain of his responsibilities and by trying to boost his morale.
Despite the fact that he followed Mrs. Wolfe’s advice to see a doctor, Mr. Gorman’s mental condition continued to deteriorate. On one occasion he left work at her suggestion because he appeared to be so nervous. This condition persisted until the morning of June 9, 1971 when according to the claimant, Mr. Gorman looked much better and even smiled and "tousled her hair” when she so remarked.
A short time later Mr. Gorman called her on the intercom and asked her to call the police to room 615. Mrs. Wolfe complied with this request and then tried unsuccessfully to reach Mr. Gorman on the intercom. She entered his office to find him lying in a pool of blood caused by a self-inflicted gunshot wound in the head. Mrs. Wolfe became extremely upset and was unable to continue working that day.
She returned to work for one week only to lock herself in her office to avoid the questions of her fellow workers. Her private physician perceiving that she was beset by feelings of guilt referred her to a psychiatrist and recommended that she leave work, which she did. While at home she ruminated *508 about her guilt in failing to prevent the suicide and remained in bed for long periods of time staring at the ceiling. The result was that she became unresponsive to her husband and suffered a weight loss of 20 pounds. Her. psychiatrist, Dr. Grinds diagnosed her condition as an acute depressive reaction.
After, attempting to treat her in his office Dr. Grinds realized that the severity of her depression mandated hospitalization. Accordingly, the claimant was admitted to the hospital on July 9, 1971 where she remained for two months during which time she received psychotherapy and medication. After she was discharged, Dr. Grinds concluded that there had been no substantial remission in her depression and ruminative guilt and so had her readmitted for electroshock treatment. These treatments lasted for three weeks and were instrumental in her recovery. She was again discharged and, in mid-January, 1972, resumed her employment with Sibley, Lindsay & Curr.
Mrs. Wolfe’s claim for workmen’s compensation was granted by the referee and affirmed by the Workmen’s Compensation Board. On appeal the Appellate Division reversed citing its opinions in Matter of Straws v Fail (17 AD2d 998, mot for lv to app den 12 NY2d 647); and Matter of Chernin v Progress Serv. Co. (9 AD2d 170, affd 9 NY2d 880), for the proposition that mental injury precipitated solely by psychic trauma is not compensable as a matter of law. We do not agree with this conclusion.
Workmen’s compensation, as distinguished from tort liability which is essentially based on fault, is designed to shift the risk of loss of earning capacity caused by industrial accidents from the worker to industry and ultimately the consumer. In light of its beneficial and remedial character the Workmen’s Compensation Law should be construed liberally in favor of the employee (Matter of Heitz v Ruppert, 218 NY 148).
Liability under the act is predicated on accidental injury arising out of and in the course of employment (Workmen’s Compensation Law, § 2, subd 7; § 10). Applying these concepts to the case at bar we note that there is no issue raised concerning the causal relationship between the occurrence and the injury. The only testimony on this matter was given by Dr. Grinds who stated unequivocally that the discovery of her superior’s body was the competent producing cause of her condition. Nor is there any question as to the absence of *509 physical impact. Accordingly, the focus of our inquiry, is whether or not there has been an accidental injury within the meaning of the Workmen’s Compensation Law.
Since there is no statutory definition of this term we turn to the relevant decisions. These may be divided into three categories: (1) psychic trauma which produces physical injury, (2) physical impact which produces psychological injury, and (3) psychic trauma which produces psychological injury. (See, generally, 1A Larson, Workmen’s Compensation Law, §§ 42.20-42.24; Render, Mental Illness as an Industrial Accident, 31 Tenn L Rev 288.) As to the first class our court has consistently recognized the principle that an injury caused by emotional stress or shock may be accidental within the purview of the compensation law (see, e.g. Matter of Pickerell v Schumacher, 242 NY 577; Matter of Klimas v Trans Caribbean Airways, 10 NY2d 209; Matter of Eckhaus v Adeck Stores, 11 NY2d 862; Matter of Snyder v New York State Comm. for Human Rights, 31 NY2d 284). Cases falling into the second category have uniformly sustained awards to those incurring nervous or psychological disorders as a result of physical impact (see, e.g., Matter of Griffiths v Shaffrey, 308 NY 729; Matter of Kalikoff v Lucas & Co., 271 App Div 942, affd 297 NY 663). As to those cases in the third category the decisions are not as clear.
Of those cases dealing with psychic trauma causing psychological injury, Matter of Chernin v Progress Serv. Co. (9 NY2d 880) is the only one to have reached our court. There, a cab driver sought workmen’s compensation benefits for a paranoid-schizophrenic condition allegedly arising after his cab struck a pedestrian. The Appellate Division denied recovery on the ground that psychic trauma unaccompanied by physical impact could not be considered an accident compensable under New York law (Matter of Chernin v Progress Serv. Co., 9 AD2d 170). In the Court of Appeals the denial was affirmed despite a vigorous dissent by Judge Dye, on the ground that the claimant’s psychic injury was a surfacing of prior internal emotional conflicts which he had previously been able to suppress. Significantly the memorandum left unanswered the question of (p 881) “whether an occurrence arising out of and in the course of employment which causes psychological trauma may in any case be compensable even though there was no physical injury.”
A few months later our court decided Matter of Klimas v *510 Trans Caribbean Airways (supra), which reinstated an award for a heart attack caused by work-related anxiety and stress, and Battalla v State of New York (10 NY2d 237), which eliminated the "impact” doctrine in the field of torts. These holdings effectively eroded the underpinnings of the Appellate Division decision in Chernin (supra), and seemed to presage an affirmative answer to the question reserved by our court in that case.
Subsequently, Matter of Straws v Fail (17 AD2d 998, supra), percolated through the courts. This case involved a claim for compensation by a billiard hall porter who was asked by his employer to accompany a fellow employee to the hospital. En route the coemployee collapsed and died in the claimant’s arms. As a result, Straws suffered psychoneurosis and was unable to work for a year. The Appellate Division denied recovery citing its own opinion in Chernin (supra), and not the Court of Appeals memorandum which had specifically left the question open. Shortly thereafter a motion for leave to appeal was denied thus giving rise to a degree of uncertainty (see 1A Larson, Workmen’s Compensation Law, § 42.23).
We hold today that psychological or nervous injury precipitated by psychic trauma is compensable to the same extent as physical injury. This determination is based on two considerations. First, as noted in the psychiatric testimony there is nothing in the nature of a stress or shock situation which ordains physical as opposed to psychological injury. The determinative factor is the particular vulnerability of an individual by virtue of his physical makeup. In a given situation one person may be susceptible to a heart attack while another may suffer a depressive reaction. In either case the result is the same—the individual is incapable of functioning properly because of an accident and should be compensated under the Workmen’s Compensation Law.
Secondly, having recognized the reliability of identifying psychic trauma as a causative factor of injury in some cases and the reliability by identifying psychological injury as a resultant factor in other cases, we see no reason for limiting recovery in the latter instance to cases involving physical impact. There is nothing talismanic about physical impact (cf. Battalla v State of New York, supra; Ferrara v Galluchio, 5 NY2d 16).
We would note in passing that this analysis reflects the view of the majority of jurisdictions in this country and England. *511 (See, e.g., Bailey v American Gen. Ins. Co., 154 Tex 430; Carter v General Motors Corp., 361 Mich 577; Burlington Mills Corp. v Hagood, 177 Va 204; Yates v South Kirkby Collieries [1910], 2 KB 538; see, also, 1A Larson, Workmen’s Compensation Law, § 42.23.)
Notwithstanding these considerations the respondents argue that to allow recovery here would be to open the floodgates with no rational way to limit liability. To support this contention they cite Tobin v Grossman (24 NY2d 609), which refused to extend to third parties a cause of action in torts for psychic injury incurred without impact. This assertion however misses the point.
In the instant case, Mrs. Wolfe was not a third party merely witnessing injury to another, she was an active participant. Mr. Gorman’s nervous condition had intensely involved her, to the point of her being required to assume his responsibilities and attempting to comfort him. Not only did she consider his suicide a personal failure but she was an integral part of the tragedy by virtue of his last communication and her discovery of his lifeless body. The feeling on her part that she should have been able to foresee and to prevent the tragedy was undoubtedly a competent producing cause of her incapacitation.
Furthermore by seeking to apply the tort concept of foreseeability the respondents disregard the basic policy of workmen’s compensation which is that if the injury was accidental and arose in the course of employment then recovery should be allowed (1 Larson, Workmen’s Compensation Law, §2). This is not to say that liability should be extended indefinitely, we must consider the record before us in light of the commonsense viewpoint of the average man (Matter of Masse v Robinson Co., 301 NY 34). It is enough to say that the claimant was an active participant in the tragedy and as a result suffered disablement, albeit psychological, for which she should be compensated.
Accordingly, the order appealed from should be reversed and the award to the claimant reinstated, with costs.