## 53364. SAWYER v. PACIFIC INDEMNITY COMPANY et al.

SUBMITTED JANUARY 7, 1977 — DECIDED JANUARY 28, 1977 — REHEARING DENIED FEBRUARY 17, 1977 —

*Skinner, Wilson, Beals & Strickland, Warner R. Wilson, Jr.,* for appellant.

*Swift, Currie, McGhee & Hiers, Charles L. Drew,* for appellees.

DEEN, Presiding Judge.

1. There is no doubt that the employer-employee

relationship ended on October 3, 1972. Neither the motor vehicle accident nor any other incidents occurring after that time can influence this claim.

2. However, the award recognizes that the psychosis from which claimant suffers was developing prior to his resignation, evidenced by personality changes and by statements he made "about his interpersonal relationships with boys under his guidance. . . made in psychology class at West Georgia College." It also recognizes evidence that the job contributed stress to the developing psychosis ("Sam had his initial breakdown when he was exposed to some things at the job situation") but finds "no evidence of any incidents or stressful episodes occurring." It is true that the evidence fails to delineate particularized traumatic occurrences, and that stress is reflected only in the claimant's reactions to the environment in which he was placed. Yet the evidence as a whole strongly indicates that the claimant, a young man with certain psychological disabilities but in no way out of touch with reality, worked closely for two years at a campus dedicated to the treatment and rehabilitation of psychological and social disorders in the young and, as a result of this experience, became acutely psychotic. The award does not represent a finding that this relationship does not exist, but only that there is a failure of evidence to show the particular stressful incidents initiating it. This finding is in accord with Georgia law, which does not adopt the premise, adopted in American National Red Cross v. Hagen, 327 F2d 559, that a disability occurring in the course of the employment must be presumed to have arisen therefrom, and so to be compensable. The applicable statute there covered accidental injury "arising out of and in the course of the employment and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." The paranoid schizophrenia there adjudged compensable arose from general stress in working conditions immediately preceding the onset of the illness. According to 1A Larson, Workmen's Compensation Law, § 42.23 "there is already visible a distinct majority position supporting compensability" in cases where a mental or emotional

stimulus results in a primarily "nervous" injury. Granted, such cases are often suspect, and must be closely examined, but where, as here, there is no suspicion of malingering or compensation neurosis (see *Swift & Co. v. Ware,* 53 Ga. App. 500 (186 SE 452)) Georgia has always recognized as compensable those mental results which result from some initial *physical* injury. It also recognizes that the injury may be so slight and repetitive that no one occasion by itself causes the disability, and holds that where the cumulative effect does so, the accident will be taken as that point in time where disability results. *Shipman v. Employers Mut. Liab. Ins. Co.,* 105 Ga. App. 487 (125 SE2d 72); *Thomas v. Ford Motor Co.,* 123 Ga. App. 512 (181 SE2d 874). What we have not recognized, however, is that "psychological or nervous injury precipitated by psychic trauma is compensable to the same extent as physical injury" as held in In re Wolfe v. Sibley, Lindsay & Curr Co., 330 NE2d 603. See to the same effect cases listed in 1A Larson, supra, Par. 42.23, note 81. See also Bernsley v. Telemarine Communications Co., Inc., 336 NYS2d 747, where death from cardiac failure was precipitated by job-related anxieties, and cases there cited. It is true as the award holds, that the mere fact that the job is in a certain minority of persons conducive to this unfortunate result cannot in and of itself be recognized as an accident in the present state of Georgia law, since it does not qualify as an "accident" and the claimant must show both accident and disability.

3. There is, however, another valid approach to the problem in this case. The evidence is undisputed that the claimant suffered from an acute psychotic attack diagnosed as paranoid schizophrenia, a mental illness characterized by loss of perception of reality, which may be, and in the opinion of the psychiatrist was, initiated by the job influences to which the claimant was exposed. This is, according to the expert testimony "a disease process."

A similar situation was presented in *Brady v. Royal Mfg. Co.,* 117 Ga. App. 312 (160 SE2d 424) where the claimant, following a severely emotional and upsetting job-related dispute, developed symptoms of paralysis in

her left arm diagnosed as a conversion reaction. The court held that the claimant could not be said to have suffered an injury resulting from an "accident" as Georgia defines that term. It then stated: "The medical evidence does not indicate that she actually suffers from a paralyzed arm; on the contrary it indicates that she merely *thinks* it to be paralyzed and will not attempt to use it. . . This may and probably does indicate what claimant suffers from is some type of mental illness. While mental illness is as real as pneumonia, like pneumonia it is an illness. It is not an 'injury' by 'accident'." This statement was the rule in Georgia prior to 1971. As stated in the dissent in *Shipman v. Employers Mut. Liab. Ins. Co.,* 105 Ga. App. 487, 495, supra: "Both this court and the Supreme Court have held consistently prior to the enactment of the occupational disease statute (Ga. L. 1946, p. 103 et seq.; Code Ann. Ch. 114-8), and since the enactment of that law with respect to occupational diseases not expressly covered therein, that an occupational disease contracted as the result of long continued exposure to conditions of the employment, as distinguished from one contracted as the result of an injury traceable to a definitely established accidental occurrence, is not compensable," and that accordingly it precluded "the award of compensation for a gradual injury, even though the result of trauma." The writer concluded: "The claimant's loss of hearing was due to his long and continued exposure to excessive noise, which was incidental to and a condition of his work. That he was, therefore, suffering from an industrial disease, to my mind admits of little doubt." Thus, in the *Shipman* case, it was recognized that the disability arose out of and in the course of employment; the dispute was whether it should be classified as accident or occupational disease. Under the evidence of physical trauma to the claimant's eardrums in that case the majority favored the legal theory of accident.

*Shipman* was decided in 1962. *Brady* was decided in 1968. In 1971 (Ga. L. 1971, pp. 895, 900) subsection 5 was added to Code § 114-803 making compensable unlisted occupational diseases if they met certain conditions: causal condition between the work and the disease, following exposure occurring by reason of employment,

with no substantial exposure outside of the employment; that it is not an ordinary disease of life to which the general public is exposed; that it had its origin in a risk connected with the employment, etc.

The evidence here strongly suggests that a disease (acute psychotic character disorder diagnosed paranoid schizophrenia) resulted from pressures of the claimant's job environment (close long term association with and responsibility for a group of disturbed men) resulting in disability to himself. This is a medical question which should properly be referred to the Medical Board for investigation under the provisions of Code § 114-819. That board would have for decision whether such diagnosis is correct, whether it was job-related, and whether the conditions of Code § 114-803 (5) have been met. The board should consider the record here, with the right of the parties to introduce additional testimony if they desire. The administrative law judge erred in holding, prior to such referral, that Code § 114-803 (5) did not apply.

*Judgment reversed with direction that this case be referred to the Medical Board for further action. Webb and Marshall, JJ., concur.*

ON MOTION FOR REHEARING.

Counsel for the defendant in a strongly worded motion to rehear urges that this court has overlooked the cases of *Burton v. Aetna Cas. &c. Co.,* 115 Ga. App. 112 (153 SE2d 734) and *McIntyre v. Employers Mut. Liab. Ins. Co.,* 122 Ga. App. 424 (177 SE2d 191), which stand for the proposition that not every case involving a medical question need be referred to the Medical Board but only those cases in which a medical question is "in controversy." Movant urges that since it is admitted that this employee suffers from schizophrenia there is no medical question in controversy. He then states, "The issue was causality, and that, if we must remind the Court, is a question of fact!" We agree with this statement as it is not controverted that the defendant now suffers from this disease but whether or not such disease resulted from his employment is a medical question and it is the crux of the lawsuit. Code § 114-803 (5) (a); Code § 114-819.

We accordingly adhere to our original opinion as written.
*Motion for rehearing denied.*