### Bill Clayton BURBANK

v.

### MUTUAL OF OMAHA INSURANCE COMPANY.

Civ. A. No. C77–1780A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 30, 1979.

Martin L. Fierman, Atlanta, Ga., for plaintiff.

Bill Burbank, pro se.

D. R. Cumming, Jr., J. D. Fleming, Jr., John W. Bonds, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

### ORDER OF COURT

MOYE, District Judge.

Presently before the Court in this diversity tort case is defendant's motion for summary judgment. Defendant has, for present purposes, conceded the truth of the plaintiff's allegations.[1]

Plaintiff, a former employee of defendant Mutual, alleges that Mutual through its employees and agents "initiated a course of conduct toward the Plaintiff, the purpose of which was to generate in the Plaintiff insecurity about his job . . . [and] for the purpose of stimulating the Plaintiff to produce ever increasing volumes of work out of a fear that his job was in jeopardy if his performance did not continually improve." Complaint, at ¶¶ 5–6. As a result thereof, plaintiff alleges that he has suffered physical and emotional harm.

---

1. Such a concession would, under some circumstances, cause the Court to construe the motion as a motion to dismiss. Here, the defendant has submitted an affidavit, but because it involves an uncontested point, it has not been considered. *See* note 8 *infra*. In this case the Court's resolution of the matter makes it immaterial whether the motion is deemed a motion to dismiss or a motion for summary judgment.

Defendant advances several arguments in support of its motion, among them that the plaintiff's exclusive remedy lies under the Georgia Workers' Compensation Act.[2] Ga. Code Ann. Title 114. Plaintiff argues that the Act does not apply here. Because the Court agrees with defendant's reliance on the exclusivity of the Act, the Court GRANTS the motion for the reasons stated herein.

It is clear that the Worker's Compensation Act provides the sole remedy for certain injuries to employees. Ga.Code Ann. § 114–103. To a large extent, the scope of the exclusive remedy is defined by Ga.Code Ann. § 114–102 which provides in part:

> "Injury" and "personal injury" shall mean only injury by accident arising out of and in the course of the employment and shall not, except as hereinafter provided, include a disease in any form except where it results naturally and unavoidably from the accident, nor shall "injury" and "personal injury" include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee . . .

Plaintiff's only argument against the exclusivity of the Act is that the Act does not cover "injury to an employee caused by willful and intentional acts of the employer's agent, where there has been a malicious, unlawful act or intentional injury by employer not reasonably contemplated as a risk to employment." *Citing Fowler v. Southern Wire & Iron, Inc.*, 104 Ga.App. 401, 122 S.E.2d 157 (1961). The Supreme Court reversed in *Fowler*, 217 Ga. 727, 124 S.E.2d 738 (1962), holding that the phrase "accident" does contemplate intentional torts. That holding has been followed by the Fifth Circuit in *Sands v. Union Camp Corp.*, 559 F.2d 1345, 1346–47 (5th Cir. 1977), by this Court in *Spencer v. Moore*

*Business Forms, Inc.*, C76–779A (N.D. Ga. October 24, 1979) and *Skelton v. W. T. Grant Co.*, 229 F.Supp. 430 (N.D.Ga. 1963), *rev'd on other grounds*,[3] 331 F.2d 593 (5th Cir. 1964), *cert. denied*, 379 U.S. 830, 85 S.Ct. 61, 13 L.Ed.2d 39, and by the Georgia Court of Appeals in *Lynch v. General Motors Corp.*, 134 Ga.App. 113, 114–15, 213 S.E.2d 525 (1975) and *Mize v. Questor Corp.*, 131 Ga.App. 361, 206 S.E.2d 97 (1974).

Even though the plaintiff has failed to present any other arguments against the result reached here, the Court believes it helpful to explain why it would reject a few arguments that have been raised in similar cases. First, it is clear, because plaintiff seeks to establish liability on the basis of respondeat superior, that the action satisfies the requirement of section 114–102, *supra*, that the accident "[arise] out of and [occur] in the course of [the] employment . . . ." *Sands*, 559 F.2d at 1348. For the same reason, the accident is not a "wilful act of a third person directed against an employee for reasons personal to such employee . . . ." Ga.Code Ann. § 114–102, *supra*.

Finally, the plaintiff might have argued that the Act does not cover purely emotional harm. *E. g. Brady v. Royal Mfg. Co.*, 117 Ga.App. 312, 160 S.E.2d 424 (1968). The Court observes that plaintiff alleges combined emotional *and* physical harm such as "hypertension, high levels of cholesterol, high blood pressure, developed emotional instability, and . . . anxiety neurosis." Complaint, at ¶ 9. In *Georgia Bureau of Investigation v. Worthington*, 149 Ga. App. 628, 255 S.E.2d 99 (1979), the court allowed recovery for similar injuries: blurred vision, headache, and impairment of speech and movement "caused by the stress and tension of the duties of his job." *Id.* at 628, 255 S.E.2d at 100. *Worthington* does not dispel all doubt on the issue however,

---

**2.** Defendant also contends that plaintiff has failed to state a claim for intentional infliction of emotional distress on the alternative grounds that (1) no such cause of action exists in Georgia, or (2) no such cause of action has been made out by plaintiff in this case. The court need not address that argument.

**3.** The Fifth Circuit stated that the claimant's unlawful detention by her employer "was in no way connected with the course of her employment or the performance of her duties for the company." 331 F.2d at 594.

because the court in *Worthington* did not actually confront the problem of whether the sort of intangible emotionally induced injuries present in that case and in this one would be deemed an "injury" or "disease" remediable under the Workers' Compensation Act.

In *Brady, supra,* the claimant had a discussion with her employer about a past absence and later, "as a consequence of her upset over this dispute" she developed what "she thought to be a paralysis of her left arm. . . ." 117 Ga.App. at 313, 160 S.E.2d at 425. Her claim was denied and the denial was upheld on appeal. The *Brady* court concluded that the claimant probably suffered from a mental illness, which though "real as pneumonia, like pneumonia . . . is an illness [and] not an 'injury' by 'accident.'" *Id.* at 314, 160 S.E.2d at 425. The court's reasoning in *Brady* is not at all clear. It most strongly emphasized that there was no "*accident.*" The court also observed that "doctors find no physical evidence of or reason for the paralysis which she *thinks* exists," *Id.* (emphasis in original), perhaps indicating that the doctors simply did not believe she was injured in any way. Finally one can argue that *Brady* means that physical harm caused by initial emotional harm does not count as an injury. This construction is supported by the dissent of Chief Judge Felton; he argued,

I think that the board too narrowly defined the word "accident." Neither the event nor the consequence was planned. An injury such as that suffered in this case causes as much industrial loss as does one preceded by a physical injury. The paralysis here is physical even though emotionally caused. Even in tort cases damages are awarded where fright or emotional disturbance result[s] in physical disability or injury and it seems to comport with reason and justice to widen the base for recovery where the disability is required to be a result of an accident.

117 Ga.App. at 315, 160 S.E.2d at 426 (Felton, C. J., dissenting) (emphasis in original). It is possible that *Worthington, supra,* implicitly refuses to continue to recognize the distinction Chief Judge Felton criticized.

*Brady* has been cited, although in *dicta*, in *Sawyer v. Pacific Indemnity Co.,* 141 Ga.App. 298, 301, 233 S.E.2d 227 (1977), for the proposition that emotionally originating injuries are not accidents. It has also been cited, however, for the *opposite* proposition in *Travelers Ins. Co. v. Neal,* 124 Ga.App. 750, 186 S.E.2d 346 (1971): "The board did not err in finding that the resulting injury was accidental, being *emotionally initiated* rather than physical." *Id.* at 751, 186 S.E.2d at 347 (emphasis added), *citing Brady, supra; Lumbermen's Mut. Cas. Co. v. Griggs,* 190 Ga. 277, 287, 9 S.E.2d 84 (1940).[4] The claimant in *Neal* had suffered a heart

---

4. The Supreme Court in *Griggs* allowed a claim where the employee suffered a *cerebral hemorrhage after physical exertion.* Accordingly, it has no real pertinence here. It uses language, however, that is instructive on the scope of the Workers' Compensation Act.

While the act severely limits the maximum amount of recovery in a strong case of serious injury, and is in this respect beneficial to the employer, it was the manifest purpose of the legislature to distribute a portion of such savings to the unfortunate employee whose case is weak but who is injured nevertheless. The purpose of the act is to alleviate human suffering and to contribute to human need when accidental injury is suffered in the manner prescribed by the statute. To construe the plain language of this statute to embrace only those accidents that are internal, is to quibble with distinctions where

there are no differences. If in the present case Griggs had been struck by one of the company's trucks in which the cement was being hauled and had suffered a rupture of the identical blood vessel, it could hardly be denied that his injury resulted from accident. Then what difference does it make that the rupture of this blood vessel was caused by force in the form of his exertion in performing his duties? In both cases the same injury is sustained. In both it results from force, and the two differ only in the nature of that force.

190 Ga. at 288, 9 S.E.2d at 91. Another case uses even broader language: "If employment contributes to injury it is an accident and is compensable." *Fox v. Liberty Mut. Ins. Co.,* 125 Ga.App. 285, 288, 187 S.E.2d 305, 307 (1972), *citing Griggs.*

attack as a result of his employer accusing him of misappropriation.[5] *Neal* in turn was cited for the following rule: "Emotionally initiated heart attacks constitute accidental injuries." *City Council of Augusta v. Williams*, 137 Ga.App. 177, 178, 223 S.E.2d 227, 228 (1976), *citing Neal*, 124 Ga.App. at 151. Both *Neal* and *Williams* may be distinguishable from *Brady* though, because they involve obviously physical injuries—heart attacks. In *Brady* the injury—paralysis—though arguably physical was apparently deemed psychological by the court.

*Sawyer, supra,* observed that a distinct majority of states now hold that an injury is compensable "where a mental or emotional stimulus results in a primarily 'nervous' injury," *Id.,* 141 Ga.App. at 300–01, 233 S.E.2d at 230. The court in *Sawyer*, nevertheless, also noted that "Georgia has always recognized as compensable those mental results which result from some initial physical injury" but, concluded that, "What we have not recognized, however, is that 'psychological or nervous injury precipitated by psychic trauma is compensable to the same extent as physical injury . . . .'" *Id.* at 301, 233 S.E.2d at *quoting In re Wolfe v. Sibley, Lindsay & Curr Co.,* 36 N.Y.2d 505, 369 N.Y.S.2d 637, 330 N.E.2d 603, 606 (1975). The *Sawyer* court went on the remand on the grounds that claimant suffered from a "disease"—"an acute psychotic attack diagnosed as paranoid schizophrenia, a mental illness characterized by loss of perception of reality." *Id.* at 301, 233 S.E.2d at 230. Under Ga.Code Ann. § 114–803(5) occupational diseases are compensable upon proof of the following:

(a) A direct causal connection between the conditions under which the work is performed and the disease;

(b) That the disease followed as a natural incident of exposure by reason of the employment;

(c) That the disease is not a character to which the employee may have had substantial exposure outside of the employment;

(d) That the disease is not an ordinary disease of life to which the general public is exposed;

(e) That the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

*Id.* at 302, 233 S.E.2d at 231.

Thus *Sawyer* seems to overrule *Brady* to the extent that *Brady* required that a *disease* (as opposed to an injury) arise from an accident, reasoning that the legislature added the aforementioned conditions in subsection 803(5) in 1971 as a response to the 1968 decision in *Brady*. There is no reason to believe that Burbank's "hypertension, high levels of cholesterol, high blood pressure, developed emotional instability, and . . anxiety neurosis" are not diseases satisfying those conditions.

In addition, *Sawyer* has been described as a case dealing with a question on the outer fringes of the Workers' Compensation Act—whether the Act compensates emotionally induced emotional injury. Christensen, *supra* note 5, at 20–21.[6] This case, involving as it does emotionally induced physical injury, does not require reaching that question. *Sawyer* observed in dicta that the Georgia courts recognize as compensable psychological injury that is physically initiated.[7]

---

**5.** *Neal* has been construed recently as authority for allowing claims for emotionally induced physical injuries. Christensen, "Psychological Injury in Workers' Compensation," 16 Ga. S.B.J. 18, 20 (August, 1979).

**6.** According to Mr. Christensen, the courts have recognized three problematic categories of cases: (1) those involving physically induced psychological injury, (2) those involving psychologically induced physical injuries, and (3) those involving psychologically induced psy-

chological injuries. That categorization was apparently adopted from *Wolfe v. Sibley, Lindsay & Curr Co.*, 369 N.Y.S.2d 637, 330 N.E.2d at 605.

**7.** It should be remembered too that *Sawyer*, acknowledged that the majority goes even further, allowing compensation for psychologically induced psychological injuries. 141 Ga.App. at 300–01, 233 S.E.2d 227. *See* Christensen, *supra* note 5, at 21 for a discussion of this view.

Under either of two theories, then, the plaintiff's exclusive remedy lies under the Workers' Compensation Act.[8] First, plaintiff has allegedly encountered diseases which, according to *Sawyer*, need not be accidents, provided they satisfy the five conditions. Alternatively, under the 1968 dissent by Chief Judge Felton in *Brady*, the decisions in *Neal* and *Williams* and the 1979 decision in *Worthington* (which may have implicitly adopted Chief Judge Felton's dissent), the Act compensates emotionally originating physical injuries. It would be entirely incongruous to hold that single incident accidental injuries are covered, provided they have a physical origination, and that diseases, mental or physical, are covered, while at the same time holding that emotionally originating physical injuries are not covered. To so hold would cause endless debate and litigation over the distinctions between disease and injury and between mental and physical injuries. Many job-related injuries, such as those complained of here do not readily admit of such black and white categorizations. The court believes that the Georgia courts would, under the circumstances of this case, conclude that plaintiff has stated a case, the exclusive remedy for which lies under the Georgia Workers' Compensation Act.

---

8. The affidavit of Lena H. Hinton and accompanying exhibit A establishes the uncontroverted point that Mutual is deemed insured by the State Board of Workers' Compensation.