Mary E. CUMMINGS, Plaintiff,

v.

WALSH CONSTRUCTION CO.,
Defendant.

Civ. A. No. CV 181–218.

United States District Court,
S.D. Georgia,
Augusta Division.

March 31, 1983.

Charles L. Wilkinson, III, Augusta, Ga., for plaintiff.

Michael C. Murphy, Charles W. Whitney, Hugh M. Davenport, Atlanta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

In this action, plaintiff Mary E. Cummings filed a five count complaint alleging in count one sexual discrimination and harassment and in Counts two through five various state tort claims. Jurisdiction is founded upon 42 U.S.C. § 2000e–5 for Count one and 28 U.S.C. § 1332, diversity of citizenship, for the state claims. As to all counts, defendant Walsh Construction Company (Walsh) filed a motion for summary judgment which is presently before the Court for resolution. For reasons of clarity and convenience, each count shall be discussed and ruled upon *seriatim*. Prefa-

tory to the summary judgment analysis, a recitation of the allegations and undisputed facts will provide a useful historical backdrop.

Plaintiff was employed as a laborer by the defendant in April, 1980 on the night shift at the Plant Vogtle project until September, 1980. It is undisputed that plaintiff was not harassed or asked to engage in sex by anyone employed by defendant during this time. In September, she was transferred to the second shift along with all other female night shift workers. This transfer did not affect her salary.

Plaintiff's transfer placed her under the supervision of foreman Taylor Kelly and general foreman Robert Wilson. Sherman Odum was Walsh's general superintendent in charge of the second shift. While working on the second shift, plaintiff contends she was approached several times by Robert Wilson for sexual favors. She further alleges that Sherman Odum solicited her for oral sex on at least one occasion. Although for the most part she refused these advances, Ms. Cummings twice engaged in sexual activities with Robert Wilson, once at the Plant Vogtle construction site. She contends that she was intimidated by Wilson into this activity the first time. The second time, plaintiff submitted to Wilson's alleged advances because he promised her he would no longer bother her. Plaintiff contends that Wilson's advances continued although she rebuffed them. Because of her refusals, plaintiff alleges that Wilson and Odum required her to perform unpleasant and harsh tasks. On September 22, 1980, she was fired for failing to follow orders. Plaintiff disputes this reason, asserting the true reason was her filing a complaint of sex discrimination with the Equal Employment Opportunity Commission (EEOC) after she was transferred from the night shift to the second shift along with the other female workers on that shift. After her discharge, she filed a second EEOC charge alleging sexual discrimination in that she was fired because of her refusal to have sex with Robert Wilson.

Walsh denies that the plaintiff was ever sexually harassed, or approached for sexual favors by Wilson or Odum. Although it is undisputed that she had sex with Wilson on two occasions, defendant argues this was done voluntarily by the plaintiff and not because of any threat or intimidation. Walsh contends it has a strong policy against sexual discrimination and harassment in any form. Walsh employees were informed of this policy on two occasions and instructed to report such conduct to their superiors. Although plaintiff alleges she had complained to her foreman, Taylor Kelly, and another superior, Max Takchunk, defendant contends plaintiff did not file any complaints or notify Walsh of this alleged conduct until a grievance hearing was held regarding her December 22nd discharge. Moreover, defendant asserts that its employees did not harass plaintiff or purposely select her for harsh tasks. The defendant further asserts that such employees did not interfere with her constitutional rights, inflict emotional distress, engage in outrageous conduct towards her or invade her privacy. With this background in mind, the various claims raised by plaintiff will now be addressed.

## COUNT I

The first count of the complaint is premised upon the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Section 2000e–2(a) states, in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(b)(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex . . .; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . .

Initially, defendant contended that Title VII did not recognize a claim of sexual harassment; that the challenged activity did not constitute a claim, if one were recognized; and that, if such a claim were cognizable under Title VII, plaintiff did not plead sufficient facts to state a claim. Although defendant has retreated from these positions in light of the Eleventh Circuit's holding in *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982), it is not clear to what extent defendant has yielded. Thus, for the benefit and protection of the defendant, the Court will consider the defendant's earlier position, with regard to Count I, as still in force.

Defendant offers three arguments in support of summary judgment on Count I. First, Walsh contends that Title VII does not encompass claims of sexual harassment by employees unless it was condoned or sanctioned by the employer. Defendant argues that because of its firm policy against such conduct, it cannot be said to have countenanced such behavior. Defendant further argues that since sexual activity is not dependent upon one specific gender, the conduct is not proscribed by Title VII, which is directed to gender based discrimination.

The first argument is easily disposed of by the *Henson* holding. In *Henson,* a former police dispatcher, Barbara Henson, filed a Title VII action against the City of Dundee, Florida charging that she had to resign under duress from her dispatcher position because of the sexual harassment by the defendant's police chief. Henson alleged that the harassment created a hostile and offensive working environment for the female employees. She also alleged that she was threatened with discharge if she did not yield to the sexual requests being made, and that because of her refusal she was prevented from attending the police academy.

The court held that the creation of a hostile and offensive working environment because of sexual harassment is proscribed by Title VII, regardless of any tangible job detriment to the employee. *Id.* at 901. It was recognized that "terms, conditions or privileges of employment" encompass mental well-being on the job. The court found sexual harassment equally opprobrious as racial harassment, which is firmly prohibited. Acknowledging that not all sexual harassment rises to the level of a Title VII claim, the Eleventh Circuit delineated the elements a plaintiff must prove in order to prevail on a claim. These elements are:

(1) The employee belongs to a protected group.

(2) The employee was subject to unwelcome sexual harassment.

(3) The harassment complained of was based upon sex.

(4) The harassment complained of affected a "term, condition, or privilege" of employment.

(5) The harassment was either actively or constructively known by the employer who failed to take prompt remedial action.

*Id.* at 903–05.

Plaintiff has leveled allegations that if proven will satisfy the above criteria. She belongs to a protected group. She alleges events that are reasonably construed as unwelcome sexual harassment and were perpetrated because she was a female, as they were not directed towards male employees. With regard to this last element, it is noted that if the impugned conduct is directed to both sexes and is equally offensive, the conduct cannot be said to be based on gender. In other words, plaintiff must show that but for her gender the alleged activity would not have occurred. *Id.* at 904. As to the fourth element, if her allegations are established, the activity of plaintiff's supervisor would be sufficiently pervasive and severe to alter her working conditions by affecting her psychological well-being. Finally, plaintiff alleges that sexual harassment was so widespread and common at the Plant Vogtle site among defendant's supervisory personnel that constructive knowledge of the behavior can be inferred. Moreover, plaintiff avers she has

complained to supervisory personnel without success. Thus defendant's first argument is without merit.

Defendant's second argument is that the plaintiff has not pled sufficient facts to state a claim. The gist of this argument is that she did not allege that the impugned conduct was undertaken strictly on the basis of her sex and was not required of the male employees. Viewing plaintiff's allegations in a favorable light, as is required on a summary judgment motion, and with the aid of the *Henson* decision, defendant's argument is without merit. Plaintiff's complaint portrays a classic scenario. It is patently obvious that the actions attributed to Wilson and Odum were taken because plaintiff is female. To require more precise pleading is to ignore the liberal pleading philosophy of the Federal Rules of Civil Procedure.

In its third argument, defendant takes the position that the alleged actions of Wilson and Odum are insufficient to constitute a Title VII claim. Defendant asserts that any actions taken by Odum and Wilson were outside the scope of their employment. Also, off-color remarks and innuendos are part and parcel of a construction site environment and are to be expected. Defendant further argues Ms. Cummings failed to report Wilson's advances and that his behavior was not approved by Walsh. Thus, the plaintiff has not shown any employment nexus between the sexual advances and the consequences of those advances. In sum, defendant seeks to portray the alleged activities of Wilson and Odum as personal interaction with the plaintiff consonant with the atmosphere of a large-scale construction project.

Defendant also asserts that plaintiff's failure to employ the grievance procedure created to deal with her harassment complaints defeats her Title VII claim. Thus, defendant was not given notice of her complaints allowing it to take remedial action and enforce its policy against sexual harassment.

As was pointed out earlier, under *Henson* a Title VII claim is established when the working atmosphere is so pervaded by persistent and severe harassment that the complainant's psychological well-being is affected. Also noted was that proof of a tangible job detriment is not required to succeed on a claim. The fact that an employer may have a policy prohibiting sexual harassment is of little significance if prompt remedial action is not taken. In this case, there are allegations not only of the plaintiff registering her complaints with her foreman and another superintendent, but also that sexual harassment was so widespread that defendant had constructive knowledge of it. This alleged constructive knowledge finds support in the allegation that some of defendant's top level management were involved in this activity. Furthermore, when a company official, possessing the power to hire and fire (or to participate in such decisions), engages in sexual harassment the company may be held liable on a *respondeat superior* basis even though company policy is violated. *Miller v. Bank of America,* 600 F.2d 211 (9th Cir.1979). Finally, there is no evidence in the record at this time of any remedial action by Walsh.

The fact that the plaintiff did not employ the defendant's or her union's grievance system before filing her EEOC charges is irrelevant and immaterial to the viability of her claim. *Henson* does not indicate that exhaustion of non-judicial remedies is a necessary prerequisite for the filing of a Title VII action. Moreover, in *Miller* a complainant was not precluded from pursuing her Title VII sex harassment action even though she had not sought relief through her employer's complaints system. *Id.* at 214. The Supreme Court has clearly stated that Title VII rights are independent of any contractual rights. A plaintiff is not required to submit to contractually provided arbitration before resorting to federal court. *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 47–48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

Finally, it should be pointed out that plaintiff has stated another *Henson-*

type sex discrimination claim. Because plaintiff was allegedly fired for refusing the advances of her supervisors, her providing sexual favors was a *quid pro quo* for job benefits. An employer may not exact such consideration from an employee. *Henson,* 682 F.2d at 908. To establish *quid pro quo* sex discrimination, a plaintiff must establish a number of elements, some of which are similar to the hostile environment claim criteria. A plaintiff must show that:

(1) The plaintiff belongs to a protected group.

(2) The employee was subject to unwelcome sexual harassment.

(3) The harassment complained of was based upon sex.

(4) The employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment.

(5) Respondeat superior: the employer is strictly liable for its supervisors' sexually discriminatory or harassing conduct which results in the loss of a tangible job benefit.

*Id.* at 909–10.

If plaintiff's allegations are proven she will then prevail on a *quid pro quo* claim in addition to a hostile environment charge.

Of course, it is not clear that plaintiff will succeed. What is clear is that there exist a number of questions of material fact as to both types of sexual harassment. For example, there are questions concerning whether or not plaintiff was harassed and fired for her refusals to submit to sexual advances, as well as whether she ever complained of this activity to company officials. Defendant has failed to pierce the plaintiff's allegations. Having thus failed to carry its initial burden of demonstrating the non-existence of any issue of material fact, the motion for summary judgment is denied as to Count I.

### State Claims

Defendant argues that it is not liable in Counts 2–5 under the theory of *respondeat*

*superior.* Walsh Construction contends that the actions of Wilson and Odum were deviations from the duties and authority delegated to them and that their conduct was personal in nature falling outside the scope of employment.

The doctrine of *respondeat superior* is codified in Official Code of Georgia § 51–2–2 which states: "Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." The recognized legal corollary to this doctrine is that once an agent or employee departs or steps aside from his employment and undertakes an act purely personal in nature, the employer is not liable for that act. *Lewis, et al. v. Millwood,* 112 Ga.App. 459, 460, 145 S.E.2d 602 (1965). The test applied in determining liability is whether the act is within the class of acts that the agent or employee is authorized to perform. *Harden v. United States,* 485 F.Supp. 380, 390 (S.D. Ga.1980), *aff'd* in part, *vacated* in part on other issues, 688 F.2d 1025 (5th Cir.1982). The tort also has been stated as whether the act is done in the course of the employer's business and for the purpose of promoting his business. *American Oil Co. v. McCluskey,* 119 Ga.App. 475, 477, 167 S.E.2d 711 (1969). Liability may still attach even though the act is expressly forbidden by the employer. *Harden,* 485 F.Supp. at 390. Furthermore, it is not necessary that the employee's conduct provide the employer with any benefit, so long as the employee intended to benefit the employer. *American Oil,* 119 Ga.App. at 477, 167 S.E.2d 711. An important consideration in ascertaining liability *vel non* is the purpose of the employee's act and its relation to the scope of his employment. *Id.* at 478, 167 S.E.2d 711. Of course, if an employer is aware of proscribed conduct and takes no steps to prevent it, he is liable for the consequences. A corporation can be equally charged with such knowledge, as can a natural employer. *Id.* at 479, 167 S.E.2d 711. In other words, an employer who possesses or is possessed

of knowledge of the employee's behavior and who fails to correct such conduct essentially ratifies his employee's acts. *Allen & Bean, Inc. of Georgia v. American Bankers Insurance Company of Florida, et al.,* 153 Ga.App. 617, 619, 266 S.E.2d 295 (1980).

Although the *respondeat superior* test appears simple in application, the appearance is deceiving. Not all employee actions fall clearly within or without the scope of employment or prosecution of the master's business. Deviations can be in major or minor proportions. Ofttimes there is a mingling of personal motive, and the furtherance of the employer's business. If the deviation is so slight that the act is still closely related to the employee's scope of employment, the employer may be liable even though the employee derived some benefit from the act. In any event, such a situation presents a jury question on the issue of whether or not there was a deviation from employment and, if so, whether it was so slight as to hold the employer liable. *Davis v. Childers,* 134 Ga.App. 534, 535–36, 215 S.E.2d 297 (1975). Unless it is a plain and undisputable case, the question of whether or not an employee was acting in the scope of his employment and in furtherance of the employer's business is a question for the jury. *West Point Pepperell, Inc. v. Knowles, et al.,* 132 Ga.App. 253, 256, 208 S.E.2d 17 (1974).

The case at bar is neither plain nor undisputed. There is evidence that the corporation was aware of Wilson's and Odum's purported activities, but failed to take remedial actions. Furthermore, there is an indication of a mingling of motives. Specifically, plaintiff was assigned harsh and unpleasant tasks allegedly for refusing the advances of Wilson and Odum. Without a doubt the tasks assigned were jobs that had to be done, and the assignment of laborers to these jobs could be said to be within the scope of Wilson's and Odum's employment. Consequently, an issue exists concerning whether the alleged sexual harassment was only a slight deviation when coupled with the job assignments. The advances and job assignments clearly evidence a mixing of personal and employment motives. Thus, an issue of whether Wilson's and Odum's actions were such a significant deviation as to take them outside the scope of their employment is present. A second issue is whether the defendant was aware of the alleged conduct and failed to take corrective action.

## Count II

In Count II plaintiff alleges that the actions of defendant's supervisory personnel were *intended to inflict emotional distress* upon her. As a result of their willful and intentional conduct, she contends that she was greatly worried about the security of her job and her ability to pay her bills. Defendant asserts it is entitled to summary judgment in this count upon one or more of three theories.

### Workers' Compensation

Walsh's first ground is that the relief for this type of claim is exclusively within the province of the State Workers' Compensation scheme and cannot be pursued in a private action. Defendant's position is that mental distress can be classified as either an injury by accident or an occupational disease as contemplated by the workers' compensation statute, Official Code of Ga. § 34–9–1 (Michie 1982). Although defendant offers reasonable arguments in support, the Court cannot agree with its position.

It is well-settled in Georgia that mental trauma alone brought about solely by psychic stimulus is not compensable as an injury. *Hanson Buick, Inc., et al. v. Chatham,* 163 Ga.App. 127, 129, 292 S.E.2d 428 (1982); *Sawyer v. Pacific Indemnity Company, et al.,* 141 Ga.App. 298, 301, 233 S.E.2d 227 (1977). In this case, there is evidence neither of any physical injury precipitating the purported mental distress nor of any physical disability arising from the distress. The distress allegedly is due to the verbal insinuations, requests and statements of Wilson and Odum. The result has been embarrassment, anger, anxiety and great worry, but no accompanying physical distress.

With respect to the "occupational disease" theory, the case law is not quite as clear-cut, but still militates against defendant's position. Defendant cites the case of *Sawyer v. Pacific Indemnity*, 141 Ga.App. 298, 233 S.E.2d 227 (1977) for the proposition that mental distress is an "occupational disease." *Sawyer* involved a claimant who developed paranoid schizophrenia after working closely for two years with a group of emotionally disturbed children. The *Sawyer* court held that the claimant's disability could not be considered an "accident." The court did recognize that the mental illness could be classified as an occupational disease compensable under the statute if certain conditions were met. These conditions, codified in Official Code of Ga. § 34–9–280 are:

(1) A direct causal connection between the conditions under which work is performed and the disease;

(2) That the disease followed as a natural incident of exposure by reason of the employment;

(3) That the disease is not of a character to which the employee may have had substantial exposure outside of the employment;

(4) That the disease is not an ordinary disease of life to which the general public is exposed;

(5) That the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

The type of emotional distress complained of in Count II, even if considered a disease (which is doubtful) is not compensable under workers' compensation. Although the majority of the incidents allegedly causing the disease occurred on the job, this type of distress is of a type to which the general public is exposed. Egregious, reprehensible conduct causing emotional trauma occurs both on and off job sites to workers and non-workers alike. There is nothing so peculiar about the construction trade and its working conditions that makes emotional distress a risk not found in everyday life.

Thus, the criteria found in § 34–9–280 is not satisfied. Furthermore, the emotional distress resulted from specific, identifiable incidents. In *Harper v. Fidelity & Guaranty Insurance Underwriters, et al.*, 147 Ga. App. 680, 250 S.E.2d 16 (1978), the Court of Appeals held that mental illness resulting from a specific incident is not an occupational disease. In the case at bar, the fact that there were several incidents does not alter this principle. To premise the classification of mental illness as an occupational disease *vel non* on whether there was more than one specific, causal incident strains credulity. This conclusion is reconcilable with *Sawyer* in that the illness complained of there arose out of a busy and close relationship with disturbed children and not from one or more specific events. Since plaintiff's emotional distress is not an "occupational disease" the workers' compensation statute is not applicable.

### Wrongful Discharge

Defendant's second theory is that plaintiff's emotional distress claim is in reality a claim for wrongful discharge or tortious interference with her employment contract. Defendant contends that since plaintiff is an "at will" employee she could be fired for any reason. Thus, her emotional distress claim is a pretext for a wrongful discharge claim, which under Georgia law an "at will" employee may not assert against her employer.

The evidence in the record shows that plaintiff is an "at will" employee. Deposition testimony of Sherman Odum, plaintiff and Fred McCarty, project manager for Walsh, establishes that defendant's managerial personnel had the authority to fire and hire employees at will. (Deposition of plaintiff at pg. 89; Deposition of Fred McCarty at pg. 35; Deposition of Sherman Odum at pg. 10). Plaintiff failed to show by specific evidence an issue regarding her status as an "at will" employee. She, however, may still bring an action for intentional infliction of emotional distress. The Court does not agree with defendant's assessment of her claim as one for wrongful

discharge or tortious interference with her employment contract. She does not seek reinstatement or damages for discharge, but, rather, for the distress caused by the activities of defendant's agents. Despite the fact that she may be fired for any reason, good or bad, defendant's agents have no authority to use that power in a threatening and intimidating manner for the sole purpose of inflicting mental harm. It would be another story if such actions were taken to impress upon a recalcitrant employee the consequences of his actions or to maintain discipline in the work force. But such is not the case in this lawsuit. Defendant argues that the sources of distress were the threats of termination and the assignment of unpleasant jobs. However, another source exists as well. The efforts of defendant's agents to have sex with her also were an alleged source of emotional distress. These efforts are totally unrelated to her job. Defendant is not protected from an emotional distress claim premised upon such conduct merely because plaintiff is an "at will" employee. It may have been within the power of defendant to fire plaintiff regardless of the reason, but Defendant does not have the authority to intentionally injure her emotionally.

Inasmuch as plaintiff's claim is not for wrongful discharge or tortious contractual interference, defendant's argument does not support summary judgment.

### Insufficient Pleadings

The third position taken by defendant involves the severity of Wilson's and Odum's actions. Defendant contends that conduct alleged by plaintiff does not amount to the level of behavior that will support a claim of intentional infliction of emotional distress.

■ Georgia recognizes a cause of action for intentional infliction of emotional distress. Not all reproachful behavior, however, will provide a claim for this type of tort. Instead, the actions of a defendant must be "so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Georgia Power Company v.*

*Johnson,* 155 Ga.App. 862, 863, 274 S.E.2d 17 (1980). Defendant cites the case of *Clack v. Thomason,* 57 Ga.App. 253, 195 S.E. 218 (1938) as support for its contentions that its agents' conduct is not actionable. In *Clack,* the defendant secretly visited the plaintiff, a married woman, made love to her and asked her to marry him. Plaintiff alleged that defendant's conduct caused her mental anguish which injured her health. The Court of Appeals held that the alleged conduct amounted merely to a moral wrong and did not state a claim for an infliction of mental distress. *Id.* at 254, 195 S.E. 218. The flaw in that plaintiff's case, however, was not that such conduct was not outrageous or humiliating, but that plaintiff had failed to show an intention on the part of defendant to inflict such distress or harm. In the case at bar, plaintiff alleges such an intention.

Defendant also cites W. Prosser, *The Law of Torts* (4th Ed.1971) in support of its position. While it is true that Professor Prosser states that a solicitation for sex to an unwilling woman has been held not to lead to liability, *Id.* at 55, he states, at page 56, that prolonged or repeated invitation, when raised to the point of "hounding" the invitee, can lead to liability.

■ In this case, plaintiff alleges repeated solicitations for sex along with threats of discharge and other due job-related consequences. These incidents occurred over a prolonged period of time, both on and off the jobsite. Thus, the conduct of defendant's agents, as alleged by plaintiff, forms the basis for a cause of action. Plaintiff alleges she has suffered from great worry and embarrassment. It is for a jury to decide if in fact she has been injured, if it is proven that Wilson and Odum did engage in the alleged conduct. Although plaintiff's description of her distress appears mild, this appears to be more a function of articulation than lack of mental trauma. The jury must determine if her alleged distress is sufficient for recovery. Accordingly, defendant's motion for summary judgment is denied as to Count II.

## Count III

In this count, plaintiff alleges the tort of outrage based upon the actions of Wilson and Odum. Defendant moves for summary judgment on this count arguing that Georgia does not recognize the tort of outrage.

Plaintiff bases her cause of action in Count III upon the same allegations supporting Count II: the intentional infliction of emotional distress. As stated in *Johnson,* the Georgia courts are not familiar with the tort of outrage. 155 Ga.App. at 863, 274 S.E.2d 17. Essentially, plaintiff is merely restating her emotional distress claim alleged in Count II. Accordingly, since the tort of outrage is not acknowledged in Georgia and plaintiff's third count is repetitive of her second count, relying on the same allegations propounded in that count, summary judgment as to Count III is granted.

## Count IV

The plaintiff's fourth claim involves the alleged tortious interference with plaintiff's contractual right of employment with defendant. Plaintiff contends that the conduct of defendant's supervisory personnel interfered with her contractual employment rights, among them the right to work without fear of sexual harassment. Defendant contends that plaintiff cannot maintain this cause of action against it because she is an "at will" employee and it is not the proper party under this cause of action.

Earlier in this order, it was concluded that plaintiff was an "at will" employee. There is no written contract in evidence establishing a definite time of employment and defendant had the power to terminate her at its own behest. When an employer enjoys this authority over its employees, the motives for discharge are irrelevant and the employer is not subject to a suit for wrongful termination. *Hall v. Answering Service, Inc. et al.,* 161 Ga.App. 874, 875, 289 S.E.2d 533 (1982). Thus, if it was within the absolute authority of defendant's supervisory personnel to fire plaintiff, a cause of action for wrongful discharge or tortious interference will not lie against the corporation or its agents. *Georgia Power Company, et al. v. Busbin,* 242 Ga. 612, 613, 250 S.E.2d 442 (1978).

Of course, an "at will" employee has a contract right which may not be unlawfully interfered with by a third person. *American Standard, Inc. et al. v. Jessee,* 150 Ga.App. 663, 666, 258 S.E.2d 240 (1979). However, if an employer's agent does not have absolute authority to fire an employee and does so improperly, that agent can be construed to be a 'third person' tort-feasor liable in an action for tortious interference. *Id.* at 667, 258 S.E.2d 240. In the case at bar, it is not altogether clear that Wilson or Odum could summarily fire plaintiff without consulting with their supervisor. Normally, this would create a question of fact for the jury. In this case, however, the existence of such a question is irrelevant for plaintiff is suing the supervisor's employer, Walsh Construction, an improper party under this cause of action. A claim for tortious interference should be brought against the individuals who allegedly interfered with her contractual rights and not against the employer. *Walker v. General Motors Corporation,* 152 Ga.App. 526, 528, 263 S.E.2d 266 (1979). Accordingly, summary judgment is granted in favor of the defendant on Count IV of the plaintiff's complaint.

## Count V

In *Cabaniss v. Hipsley,* 114 Ga.App. 367, 151 S.E.2d 496 (1966), the Court of Appeals delineated four related torts which come within the rubric "invasion of privacy." These torts are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and, (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Id.* at 370, 151 S.E.2d 496. Although plaintiff alleges generally an invasion of privacy in the fifth count of her complaint, the subsequent pleadings and briefs indicate she is specifi-

cally alleging only (1) and (2) of the four torts. Accordingly, the court will address defendant's summary judgment motion only to the extent that it concerns these two claims although defendant has briefed the court on all four. For the reasons to follow, defendant is entitled to summary judgment on these two causes of action.

### Intrusion upon Plaintiff's Seclusion or Solitude or Her Private Affairs

This tort does not require the publication of private facts concerning the plaintiff, but is directed to protecting the integrity and sanctity of physical areas a person would naturally consider private and off limits to uninvited, unwelcomed, prying persons. Thus, an essential element of this tort is a showing of physical intrusion, analogous to a trespass, into a plaintiff's private affairs, seclusion or solitude. *Peacock v. Retail Credit Company,* 302 F.Supp. 418, 422 (N.D.Ga.1969). Plaintiff contends this element is satisfied by Robert Wilson's engaging in sexual intercourse with her. Defendant, on the other hand, contends that no physical intrusion of the type contemplated by the counts was committed in this case. Whether the act of sexual intercourse is a sufficient physical intrusion *vel non* has never been addressed by a Georgia court. Furthermore, no authority supporting this proportion has been cited to the Court. It is, however, unnecessary to address this issue inasmuch as plaintiff's claim contains a fatal defect in another respect.

One glaring facet that can be gleaned from the "intrusion" cases is the fact that the actions of the defendant were unwanted, uninvited and unwarranted. *E.g. Walker v. Whittle, Sheriff, et al.,* 83 Ga.App. 445, 64 S.E.2d 87 (1951) (unlawful entry into plaintiff's house by law enforcement officers to arrest husband of plaintiff); *Marcelli v. Teasley,* 72 Ga.App. 421, 33 S.E.2d 836 (1945) (loud and threatening language and conduct used by defendant to gain entry into plaintiff's house held actionable); *Fowler v. Southern Bell Telephone & Telegraph Company, et al.,* 343 F.2d 150 (5th Cir.1965) (placing wiretap on plaintiff's tel-

ephone). In "intrusion" cases it is obvious that where a plaintiff knew of the intrusions there was some objection or resistance, *Marcelli v. Teasley,* and where unknown the plaintiff would more than likely have behaved or acted differently.

In the case at bar, there does not seem to be any issue that plaintiff did not desire to have relations with Wilson, but it is also altogether apparent that she willingly had sex with him. Although her reasons for doing so suggest that she believed her actions were an avenue of last resort, she in fact was not physically forced into sexual relations with Wilson. It is plain that plaintiff had other courses of action but that she did not avail herself of them. In her deposition, plaintiff, at page 38, details her sexual encounter with Wilson on the job site. Her recital of that event does not indicate any threat of harm, much less one that could be said to have forced plaintiff's submission by duress. Again plaintiff had the alternative of outright refusal. She did not choose that path, and in so doing, waived whatever right to privacy she had as to her personal seclusion or solitude.

### Public Disclosure of Embarrassing Private Facts About the Plaintiff

Under this privacy tort, three elements must be shown to establish liability: "(a) the disclosure of private facts must be a public disclosure, (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; and (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *Cabaniss,* 114 Ga.App. at 572, 151 S.E.2d 496. Defendant contends that these three elements are lacking in plaintiff's cases. The court disagrees with defendant as to the first element, but agrees with its position as to the second. Thus, consideration of the third element is unnecessary.

Under this claim, plaintiff is complaining of Wilson's publication of the fact he and plaintiff had engaged in sexual relations. This, taken alone, would satisfy the second requirement of this tort. Plaintiff,

however, by her own action has negated the effect of Wilson's publication by communicating the events herself to third persons. If her activity with Wilson is an individual privacy right, which could not be waived by Wilson despite his necessary role, she has waived her right by informing others of what she did. To hold otherwise would permit plaintiff to hold others liable for disclosure of matters from which she herself had stripped the veil of privacy. Such a double standard is not compatible with the principle and concept of a right of privacy. Consequently, as plaintiff had informed others of her actions, Plaintiff's deposition at page 88, she has waived her right not to have her affairs with Wilson disclosed by him.

Accordingly, defendant is entitled to summary judgment on Count V in its entirety.

### Conclusion

To summarize, defendant's motion for summary judgment is denied as to Counts I and II, but is granted as to Counts III, IV and V.