In the Matter of THOMAS E. CURRAN, Appellant, v ROBERT McGUIRE, as Chairman of the Board of Trustees of the New York City Police Department Article 2 Pension System, et al., Respondents.

First Department, June 8, 1982

### APPEARANCES OF COUNSEL

*Kenneth E. Gordon* of counsel (*Murray A. Gordon* with him on the brief; *Gordon & Shechtman, P. C.,* attorneys), for appellant.

*Irving Genn* of counsel (*Leonard Koerner* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

FEIN, J.

In this CPLR article 78 proceeding, petitioner, a police department detective retired on ordinary disability, seeks line-of-duty accident disability retirement. Petitioner, 48 years of age, was appointed to the police force on November 26, 1957, and was subsequently appointed a detective. On

May 12, 1976, while petitioner was on duty, a police sergeant whom he knew attempted to commit suicide in the station house. Petitioner managed to get the sergeant to a hospital, where the sergeant ultimately died. Two weeks after the suicide, the sergeant's wife also committed suicide.

On January 18, 1978 petitioner went on sick report and he has never returned to duty. On February 1, he was admitted to Brunswick Hospital Center where he was treated for arthritis of the neck. Discharged on February 11, he was readmitted to the hospital on February 13, diagnosed as suffering from depressive neurosis. The report indicated "History of depression — worse last week — on cortisone — related to anxiety of loss of health". The report further indicated that petitioner had suffered from depression for two years, that he had family problems, and that he despised his job and the duties assigned to him. He claimed to have "injured neck 2 years ago — with several hospitalizations — but he would return to work full duty but knew he wasn't capable".

At an interview on February 15, 1978, petitioner admitted years of heavy drinking, and that he had been an alcoholic. He was discharged from Brunswick Hospital on March 22 of that year. Although the discharge indicated he was suffering from depression precipitated by job pressure and marital discord, there is no mention in the hospital record of any trauma related to the police sergeant's suicide. Petitioner did not return to duty.

While on sick leave, petitioner was examined by the department psychiatric consultant, as well as his own psychiatrist. He was treated by Dr. Pingili, a psychiatrist affiliated with Brunswick Hospital. In reports dated May 3, July 17 and October 12, 1978, Dr. Pingili noted petitioner's depression and anxiety, rendering him unable to return to work. Again no reference was made to the sergeant's suicide.

On March 8, 1979 Dr. Zoppa, the department's psychiatrist, reported that his examination of petitioner revealed anxiety and depression to such an extent that he ought not to be returned to duty. Dr. Zoppa's report indicated that

petitioner mentioned the sergeant's suicide as a factor in his attitude toward the department.

Petitioner's application for accident disability retirement, premised upon neck and back injuries allegedly sustained on July 25, 1974, was disapproved by the medical board on September 13, 1978, and petitioner was continued on paid sick leave. He made no claim that he was disabled as a result of a service-incurred mental disorder.

In May, 1979 the commissioner sought to have petitioner retired for disability on the ground of mental depression. The request was for ordinary disability retirement (Administrative Code of City of New York, § B18-42.0) or, alternatively, for accident (line-of-duty) disability retirement (§ B18-43.0). The psychiatric medical board examined petitioner and the medical reports concerning him, and it issued a report recommending retirement for ordinary disability. The report, in pertinent part, stated:

"He says there is something wrong, that he has flashes of recall about things that happened on his job and is particularly related to the suicide of a Sergeant whom he accompanied to the hospital prior to his demise. He stated: 'I had to go through his property and I cannot forget this incident.' * * *

"5. Based on the above data, it is the opinion of the Medical Board that Detective Thomas E. Curran is unfit for police duty with a diagnosis of depressive disorder with anxiety features. *His disability is permanent, partial and not related to his police duties. The Medical Board Article II recommends that the Police Commissioner's request for ordinary disability retirement be approved.*

"6. It is further recommended that the Police Commissioner's request for accident disability retirement be disapproved as the Detective should be able to function in a less stressful occupation." (Emphasis supplied.)

On August 29, petitioner's application came before the Board of Trustees of the Police Pension Fund who voted, 6 to 6, on a resolution to accept the recommendation of the medical board. Pursuant to *Matter of City of New York v Schoeck* (294 NY 559), petitioner was retired on ordinary disability.

Following retirement and after retention of counsel, petitioner was referred to a new psychiatrist who concluded that petitioner's difficulties dated from the incident with the sergeant. Petitioner's application to the board of trustees for reconsideration was denied.

This article 78 proceeding followed, seeking retirement on accident disability.

Special Term found there was credible evidence that petitioner's mental problems went back over 10 years and were related to marital problems and excessive drinking, that the occurrence in the station house concerning the sergeant's suicide was not an accident within the meaning of section B18-43.0 of the Administrative Code, and that petitioner was therefore not entitled to an accident disability pension.

The trustees are entitled to rely on the report and recommendation of the medical board (*Matter of Drayson v Board of Trustees of Police Pension Fund of City of N. Y.*, 37 AD2d 378, affd 32 NY2d 852). However, there must be a rational basis for the determination. The proceedings should disclose the reason for the denial (*Matter of Meschino v Lowery*, 34 AD2d 255). The determination must be set forth in such manner as to permit adequate judicial review (*Matter of Giannino v Lang*, 52 AD2d 539).

Although Special Term made reference to a history of mental problems related to excessive drinking and marital discord, and also considered whether the incident involving the sergeant was an accident, none of these matters was mentioned in the report of the medical board or the report of the trustees. Neither report excluded the station house incident involving the sergeant as a possible cause of disability. The medical board's report gave no real indication why the application for accidental disability was denied. There is merely the statement "[h]is disability is permanent, partial and not related to his police duties." Such a bald conclusion is insufficient to support the trustees' determination or to permit adequate review (*Matter of Walsh v Codd*, 68 AD2d 805). As *Walsh* holds, the medical board was not required to determine the actual cause of petitioner's disability. However, it was the board's duty to

state whether the disability was causally related to the station house incident with the sergeant. The board failed to indicate clearly that the suicide was not causally related to petitioner's disability (see *Matter of Schweitzer v Codd,* 63 AD2d 66; *Matter of Bombacie v Board of Trustees of Police Pension Fund, Art. II, N.Y. City Police Dept.,* 74 AD2d 530). The report is so vague that it is difficult to determine whether there was credible evidence sustaining the determination of the trustees (cf. *Matter of Manza v Malcolm,* 44 AD2d 794). The nature of the medical report is such that adequate judicial review is not possible, and remand is required for further consideration (*Matter of Meschino v Lowery, supra*).

Respondents contend that the sergeant's suicide could not be considered an accident, pursuant to section B18-43.0 of the Administrative Code. An "accident" has been defined as a "sudden traumatic injury during a particular incident" (*Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman,* 52 NY2d 463, 468). The incident in the station house at the time of the sergeant's suicide was sudden and traumatic and occurred while petitioner was on duty. However, we do not reach that issue in the light of the failure of the medical board to indicate whether it considered the station house incident as a possible cause of petitioner's disability. Although the trustees may rely on the medical board even if the medical evidence is conflicting, such reliance is without foundation if there is no clear finding by the medical board on the basis of the evidence before it (*Matter of Manza v Malcolm, supra*). In the absence of a clear finding by the medical board excluding the station house incident as a cause of petitioner's conceded disability, the trustees' determination lacked a rational basis.

Accordingly, the judgment, Supreme Court, New York County (KIRSCHENBAUM, J.), entered on or about March 4, 1981, should be reversed on the law, without costs, and the petition granted to the extent of annulling the determination of the trustees and remanding the proceeding for further consideration by the medical board.

KUPFERMAN, J.P. (dissenting). I would affirm. There was a rational basis for the determination by the trustees

who relied on the report of the medical board. There was no need for a specific "finding by the medical board excluding the station house incident as a cause of petitioner's conceded disability".

LUPIANO, BLOOM and MILONAS, JJ., concur with FEIN, J.; KUPFERMAN, J. P., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on or about March 4, 1981, reversed, on the law, without costs and without disbursements, and the petition granted to the extent of annulling the determination of the trustees and remanding the proceeding for further consideration by the medical board.