OPINION OF THE COURT
Richard Lee Price, J.
This is an application by petitioner pursuant to CPLR article 78 to set aside a determination by respondents that denied him an accident disability pension. Respondents cross-move for dismissal.
Petitioner has been a uniformed transit police officer since May 3, 1965. Sometime in 1979 petitioner applied to the Transit Authority for an ordinary disability retirement pension due to a loss of hearing. The department, on recommendation of the medical board, determined that petitioner had indeed suffered a loss of hearing as a result of his employment and petitioner was thereafter scheduled to retire as of March 25, 1980. (This order was issued February 1, 1980.)
*542 Petitioner was notified on March 17, 1980, that the decision to retire him was to be reviewed by the medical board. On April 1, 1980, and May 12, 1980, the petitioner was further notified that review was yet pending.
On or about January 22, 1981, the petitioner was directed to report back to work and commence full duty on January.26, 1981. The respondents maintain that petitioner was offered work away from the noise-producing environment and regular (9-5) hours. This allegation is not denied by the petitioner.
Upon appearance for work on the designated date, petitioner appeared so anxious and depressed that a Transit Authority psychologist took petitioner’s gun and referred him to a psychiatric consultant to the Transit Authority. After this initial consultation petitioner was carried by the Transit Authority as “administratively sick”. Upon return to his home in up-State New York, petitioner underwent psychiatric treatment. On March 11, 1981, the petitioner filed an application for accident disability retirement with the respondent Board of Trustees, New York City Employees’ Retirement System (NYCERS). The application listed the date of the “accidental injury” as March 20, 1980.[1]
On June 29, 1981, Julia Hegarty, assistant chief of the medical division at the retirement system, notified the petitioner that his claim would not be considered. The reason given for this refusal was that the Transit Authority had no record of an accident involving the petitioner on that date. The petitioner was given an opportunity to furnish evidence of the accident, but chose to bring on this CPLR article 78 petition instead.
The petition now before this court requests: (1) An order directing the respondents to consider the March 20, 1980, date and the events surrounding it as a predicate for an *543 accident disability retirement, and (2) An order directing respondents to award petitioner an accident disability retirement.
Respondents NYCERS and Michael cross-move to dismiss the petition on the ground that it fails to state a legally cognizable grievance.
Respondents New York City Transit Police Department and James B. Meehan, chief of that department, cross-move for dismissal, arguing that the determination upon which the petition is based is not their determination, as well as on the basis that the relief requested in the petition cannot be granted by reference to them. The power to grant the accident disability retirement apparently lies solely with the retirement system and therefore respondents transit department’s and Meehan’s cross motion to dismiss is granted.
The issue before this court involves application of the accident disability retirement statute contained in the Administrative Code of the City of New York. That statute reads, in pertinent part: “§ B3-40.0 Retirement for accident disability * * * If * * * medical examination * * * shows that any member * * * is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city service * * * [the] board shall retire such member for accident disability forthwith.”
In simpler language, the statute requires an incapacitation that is the natural and proximate result of an injury that is both (a) accidental, and (b) received in city service.
As a matter of preliminary concern — was the petitioner’s nervous breakdown a natural and proximate result of the emotional trauma created by the uncertainty of petitioner’s future? While the medical evidence is not totally clear, it would appear that the emotional trauma was at the very least a contributing cause of the nervous breakdown. Employing an analogy to principles of Workers’ Compensation Law, this court notes that whether or not an injury is the sole or concurring cause of an incapacitation, an employer will be held liable for compensation. (Matter of Agardi v Town of Islip, 25 AD2d 800.) This reasoning is *544 especially necessary in cases involving not only mental-emotional incapacities but also mental-emotional injuries.[2]
But the real question in this case is whether the injury received by petitioner can correctly be categorized as an “accident received in city service” for the purpose of the statute.
There can be no doubt that petitioner’s treatment by respondent and .his resultant nervous breakdown is not compensable as an “accidental injury” in any traditional sense. But this court does find, for the reasons and facts as set forth below, that petitioner may be entitled to some form of compensation under a rather nontraditional, but no less necessary, legal concept.
It is uncontroverted that petitioner did suffer a loss of hearing as a result of his service as a Transit Authority policeman. It is also uncontroverted that petitioner was scheduled to be retired on a particular date; that he did then perform all the necessary machinations to so retire; that he did, upon that date, remove himself from the City of New York to live with his family in up-State New York; that thereafter he began to receive correspondence from the respondent NYCERS notifying him that his retirement status was being reviewed, and said correspondence continued in an indefinite sense for approximately nine months until petitioner was directed to return to work in January of 1981.
Contained in the papers submitted to this court is a reference to the possible reasoning for respondent’s conduct in relation to petitioner. It would appear that respondents were seeking to remedy an abuse of the retirement system by employees who were retiring at rather high pensions on the basis of relatively minor hearing losses after working many hours of overtime that increased their base salary. The possibility of such reasoning by respondents is considered by this court as both an explanation for the conduct of respondents as well as a balancing factor against the obvious resultant harm to petitioner.
*545 Psychiatric reports submitted to this court indicate that petitioner did, undeniably, suffer certain mental-emotional injuries as a result of treatment he received by respondent NYCERS in stringing him along and eventually causing him to be directed back to work. One psychiatrist indicated that petitioner’s obvious problems were also the result of excessive drinking, home pressures, and the births of petitioner’s fourth and fifth children.
Because of the remarkable dearth of case law with respect to retirement and disability pensions, reference must again be made to Workers’ Compensation Law for guidance.[3]
In the realm of that body of law emerges a concept known as “compensation neurosis.” (IB Larson, Worker’s Compensation, § 42.24.) Strictly speaking, “compensation neurosis” is “the recurrence of temporary disability from a neurosis precipitated by reopening of a workmen’s compensation claim”. (Detjen v Workmen’s Compensation Appeals Bd., 42 Cal App 3d 470, 476.) But the most controversial aspect of the concept has been the extension of compensable coverage to situations where the injury sought to be compensated is of a totally mental-emotional nature, without reference to the underlying physical disability.
The State of New York recognized the concept of compensation neurosis in 1939 in Matter of Rodriguez (256 App Div 875). In that case the claimant received a work-related back injury. Thereafter, the claimant’s award was repeatedly reviewed, litigated, and was, on more than one occasion, taken from him. Because of the incredible uncertainty regarding his award, the claimant became increasingly depressed and anxious and developed dementia praecox, eventually attempting suicide. The court held the mental-emotional injury an accidental injury arising out of and in the course of employment, recognizing and applying the “compensation neurosis” concept. Cases since Rodri *546 guez have merely served to reaffirm recognition of the concept while injecting an employer defense of “malingering” into the picture. (Matter of Kalendowich, 9 AD2d 979.) There is no evidence of malingering before this court in the present case at the present time.
Cases cited by respondent in support of its cross motion to dismiss are distinguishable. In both Matter of Serrano v McGuire (Index No. 5301/79, Supreme Ct, NY County, 1979, affd 81 AD2d 1047) and Matter of Spodek v New York Teachers’ Retirement System (Index No. 22924/79, Supreme Ct, NY County, 1980, affd 78 AD2d 1020), the activities engaged in by respondents apparently disrupted petitioners’ lives in work-related proceedings and arguably caused mental-emotional injuries, but neither the proceedings nor the injuries arose out of uncertainty regarding a prior physical injury and compensation claim therefore.
Upon the foregoing analysis, this court denies respondent NYCERS’ cross motion to dismiss and the petition is granted to the extent of directing the respondent to serve and file its answer to the petition within 20 days after service of a copy of the order to be settled on this decision.
Petitioner may renotice the petition upon five days’ notice, for consideration by this court on the merits, after service of a copy of the answer or after expiration of the time for answering (CPLR 7804, subds [e], [f]).

. It would appear that the petitioner chose this date as the beginning of the respondents’ activities that constituted the alleged “accident”. Petitioner was first notified that his ordinary disability retirement was being reviewed on March 17, 1980. The petition, however, in paragraph (34) states the following: “The accident complained of herein is the order by Respondent, Transit Police Department, directing the petitioner herein to report back to the Police Academy for Full duty”. The petition clearly states, in paragraph (26), that the petitioner was directed to report for work “on or about January 22, 1981.”

. Mental-emotional incapacitations caused by mental-emotional injuries were first recognized as compensable in Wolf v Sibley, Lindsay & Curr Co. (36 NY2d 505.)

. A recent decision, Matter of Curran v McGuire (87 AD2d 223), addresses the issues of accident disability retirement for mental depression and the meaning of “accidental” under the statute. The court remanded the matter for further consideration by the medical board, refusing to hold, as a matter of law, that a co-worker’s suicide could not be an “accident” as contemplated by the statute. The case, though instructive, does not dispose of the matter before us.