**Avis D. SIMON, Plaintiff,**

v.

**MOREHOUSE SCHOOL OF MEDICINE, et al., Defendants.**

**Civ. A. No. 1:92–CV–3049–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 6, 1995.

Alexander McArthur Irvin, Sandra Kaye, Stuart, Irvin, Stanford & Kessler, Atlanta, GA, for plaintiff.

Phillip A. Bradley, Long, Aldridge & Norman, Atlanta, GA, for defendant Morehouse.

Mary Diane Owens, Sidney F. Wheeler, Quinton Spencer Seay, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for defendants Morehouse and Braithwaite.

Mairen C. Kelly, Joseph Michael English, Fisher & Phillips, Atlanta, GA, for defendant Harris.

*ORDER*

FORRESTER, District Judge.

This matter is before the court on Magistrate Judge Joel M. Feldman's Report and Recommendation. No objections have been filed by the parties.

In his Report and Recommendation, Magistrate Judge Feldman has recommended that Defendant Ronald Braithwaite's motion for summary judgment [55–1] be GRANTED due to failure to perfect service. In addition, the Magistrate Judge has recommended that Defendant Morehouse School of Medicine's motion for summary judgment [59–1] be DENIED due to disputes of material fact. After careful consideration, the Magistrate Judge's Report and Recommendation is ADOPTED. The parties are reminded that the Magistrate Judge has ORDERED that the consolidated pretrial order be filed within thirty (30) days of the date of entry of this order.

SO ORDERED.

### *MAGISTRATE JUDGE'S REPORT, RECOMMENDATION AND ORDER*

FELDMAN, United States Magistrate Judge.

This is an employment discrimination case filed by a female former employee of the defendant Morehouse School of Medicine (hereafter "Morehouse"). The plaintiff alleges that (1) during her employment in a clerical capacity with Morehouse's Health Promotion Resource Center ("HPRC") from January, 1991 until March, 1992, she was subjected to sexual harassment by Dr. Braithwaite, then director of the HPRC, and Harris, a co-worker at HPRC (including, *inter alia*, a sexual assault by Harris), which harassment created a hostile work environment,[1] in violation of Title VII of the Civil Rights Act, as amended (42 U.S.C. § 2000e *et. seq.*); (2) said harassment created intolerable working conditions, which resulted in her constructive discharge in March, 1992, also in violation of Title VII;[2] (3) said harassment, under Georgia law, constituted an intentional infliction of emotional distress upon the plaintiff, for which all three defendants are liable; (4) said harassment, under Georgia law, constituted an invasion of the plaintiff's privacy, for which all three defendants are liable; (5) having been aware of Harris' propensity to sexually harass the plaintiff prior to Harris' alleged rape of the plaintiff, defendants Morehouse and Braithwaite are liable under Georgia law for the plaintiff's injuries resulting from the sexual assault, under the tort of negligent retention and supervision; and (6) Harris is liable to the plaintiff for assault and battery under Georgia law.

Presently pending before the undersigned are the Motions for Summary Judgment filed by Braithwaite [Doc. 55] and Morehouse [Doc. 59]; the plaintiff's response [Doc. 64], and the defendants' replies thereto [Docs. 67, 68]. Harris has not filed a summary judgment motion, and this Court will not consider the three state law claims against him further.

*PART TWO*

### *THE ISSUES*

1. *WHETHER BRAITHWAITE IS ENTITLED TO SUMMARY JUDG-*

---

1. In their motions, Morehouse and Braithwaite address the question of whether the plaintiff has established a claim of quid pro quo harassment via the conduct of Braithwaite, who plaintiff labels her "indirect supervisor." However, even a liberal reading of the plaintiff's complaint indicates clearly that she is only raising a claim of hostile work environment harassment. Indeed, the plaintiff makes no attempt to support a claim of quid pro quo harassment in her response to the defendants' motions for summary judgment.

2. Both Title VII claims lie only against Morehouse, and not the individual defendants, because only Morehouse was the plaintiff's employer under 42 U.S.C. § 2000e(b). *See Smith v.* *Lomax*, 45 F.3d 402, 403–04, fn. 4 (11th Cir. 1995); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *United States EEOC v. AIC Security Investigations*, 55 F.3d 1276 (7th Cir. 1995); *Garrett v. Clarke County Board of Education*, 857 F.Supp. 949, 952–53 (S.D.Ala.1994); *Saville v. Houston County Healthcare Authority*, 852 F.Supp. 1512, 1523–1525 (M.D.Ala.1994). In any event, the plaintiff concedes that any potential Title VII claim he has against Braithwaite individually is procedurally barred because she failed to file a charge of discrimination against him with the EEOC. Plaintiff's Response [Doc. 64], p. 3.

*MENT BECAUSE THE PLAINTIFF HAS FAILED TO EFFECT PERSONAL SERVICE UPON HIM?*

2. *WHETHER DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT AGAINST MOREHOUSE?*

3. *WHETHER DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF CONSTRUCTIVE DISCHARGE AGAINST MOREHOUSE?*

4. *WHETHER THE PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE EXCLUSIVITY PROVISION OF THE GEORGIA WORKERS' COMPENSATION ACT?*

5. *WHETHER DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?*

6. *WHETHER DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIM OF INVASION OF PRIVACY AGAINST MOREHOUSE?*

7. *WHETHER DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIM OF NEGLIGENT RETENTION AGAINST MOREHOUSE?*

**3.** It is undisputed that from January, 1991, her date of hire, until early April, 1991, on the date of an "employees' retreat" at Lake Lanier, the plaintiff had no personal conversations or interaction with either Braithwaite or Harris.

**4.** This Court will not include the plaintiff's allegations which are not supported by citations to her sworn testimony (i.e. her deposition).

*PART THREE*

### THE FACTS

Accepting the plaintiff's allegations in her response to the summary judgment motions as true, Harris and Braithwaite—Harris' supervisor—engaged in the following conduct toward the plaintiff from April, 1991[3] through February, 1992.[4]

In April, 1991, Harris began making sexual advances to the plaintiff. Harris told her that he was Braithwaite's "right-hand man" and made other statements to the plaintiff indicating that he had influence with Braithwaite. In part because of Harris' statements about his influence with Braithwaite, in April, the plaintiff entered a consensual sexual relationship with Harris (i.e. they had sexual intercourse which the plaintiff testified that Harris did not force upon her [See Plaintiff's Deposition ("P.D."), 115–16] ). Harris denies that he and the plaintiff had such a sexual relationship.

In May, plaintiff insisted on ending the sexual relations and the affair. In response, Harris became hostile, and thereafter, he cursed at the plaintiff, made belittling comments about her to other employees and stared at her, all of which made her uncomfortable in the workplace. P.D., pp. 143–46, 155–56, 164–79.

Plaintiff reported all of the foregoing occurrences to her supervisor, Dr. Leonard Jack, Jr.[5] P.D., pp. 97–99, 108–09, 138, 181. In May, the plaintiff also told Braithwaite that Harris was harassing her and was making belittling comments about her to co-workers. P.D., pp. 180–185.

Thereafter, the plaintiff continued to feel uncomfortable in the workplace with Harris. Specifically, Harris continued to make belittling comments about the plaintiff to other co-workers, and continued to stare at her. Again, the plaintiff reported Harris' conduct

**5.** Based on Morehouse's Statement of Material Facts As To Which There Exists No Genuine Issue, it is undisputed that in October, 1991, the HPRC clerical support staff was reorganized from unit supervision to a centralized supervision system, to be supervised by Alice Mitchell. Accordingly, in October, 1991, the plaintiff's supervisor changed from Dr. Jack to Alice Mitchell.

and her feeling that she was being harassed to Dr. Jack. P.D., pp. 185–88.

In June, 1991, Braithwaite scheduled a meeting with Harris, the plaintiff and Dr. Jack to discuss reports of conflict in the workplace between Harris and the plaintiff. At that meeting, Harris accused the plaintiff of spreading rumors in the workplace that the two were having a sexual relationship. After a brief discussion among the parties, Braithwaite instructed the plaintiff and Harris that the personal conflicts between them were inappropriate and would not be tolerated in the work environment. P.D., pp. 188–92; Braithwaite Deposition, pp. 104–106.

It is undisputed that between June and October, 1991, Harris did not engage in any sexually harassing conduct toward the plaintiff. However, the plaintiff alleges that Braithwaite did. Specifically, after the meeting (still in June, 1991), Braithwaite approached the plaintiff in the workplace and asked her if the rumor circulating that she and Harris had a sexual relationship was true. Braithwaite also asked her "how big" Harris was and if Harris was good in bed. Braithwaite's comments upset and angered the plaintiff, who reported the incident to Dr. Jack. P.D., pp. 195–99.

On July 16, 1991, the plaintiff told Braithwaite that she did not agree with a plan to re-locate secretarial employees within the HPRC office. The next day, Braithwaite sent the plaintiff a memo in which he accused her of "disrespectful and obnoxious" behavior in front of other employees, and instructed her to refrain from "such insubordination and disrespect in the future." Braithwaite Deposition, Exh. 6. Braithwaite did not send memoranda to any other employees using that sort of language. Braithwaite Deposition, p. 240.

In August or September, 1991, Braithwaite showed the plaintiff a chair with a back massaging device in it, and suggested that she sit in it because she might get an orgasm therefrom. P.D., pp. 200–01.

In October, 1991, Harris resumed his harassment of the plaintiff. He pinched the plaintiff on the buttocks and touched her breasts one or two times, which made the plaintiff upset and angry. On one day, he repeatedly entreated the plaintiff to stay late at work with him to have sex. After the plaintiff refused and tried to leave, Harris pulled his truck behind her car in the parking lot to prevent her from leaving. After she threatened to honk her horn until a security officer responded, Harris permitted her to leave. P.D., pp. 221–230.

The next day, in the workplace, Harris telephoned the plaintiff, and using vulgar language, he again solicited sex. Specifically, he told the plaintiff she had "good pussy," and that she had never given him the oral sex that he wanted. The next day, Harris again telephoned the plaintiff, and the plaintiff began recording the conversation. Apparently early in that conversation, Harris suspected that the plaintiff was recording what he was saying. Hence, he hung up the phone, stormed into the plaintiff's office and began cursing, ranting and raving at the plaintiff so loudly that other employees came to see what was happening. P.D., pp. 230–235, 728–32.

Again, the plaintiff reported all of the above October, 1991 incidents with Harris to Dr. Jack, who merely told her to stay away from Harris because both the plaintiff and Harris were married. P.D., pp. 225, 227–28.

Braithwaite contends that at some point in November, 1991, after an announcement of the reorganization of the clerical pool and a change in plaintiff's supervisor to Alice Mitchell, the plaintiff indicated she could never accept Alice Mitchell as her supervisor and would rather resign. Accordingly, Braithwaite wrote memoranda to the plaintiff encouraging her to resign, and to Dr. Walter Sullivan, Jr., Ph.D., Vice–President for HPRC (Braithwaite's superior) recommending that the plaintiff be terminated. P.D., pp. 238–242; Braithwaite Deposition, pp. 160–182. In response to Braithwaite's memoranda, the plaintiff met with Dr. Sullivan and advised him that Braithwaite was attempting to "harass" her into resigning, and that she and Alice Mitchell, in fact, got along well.[6] Subsequently, Dr. Sullivan declined to

6. Although the plaintiff apparently disputes that she said to Braithwaite that she would rather

terminate the plaintiff, and she remained employed, then under the supervision of Alice Mitchell. Braithwaite Deposition, pp. 179–182.

At approximately 4:45 p.m. on December 13, 1991, believing she was the last person remaining in the workplace, the plaintiff reached into Harris' office to turn off the lights in preparation for leaving for the day. Harris, the only other person remaining in the workplace grabbed the plaintiff, pulled her into his office, and closed the door. He then entreated her to stay late and have sex with him, touching her breasts, rubbing her legs, and forcing her hand onto his erect penis. The plaintiff became afraid, plead with Harris to let her go, and pushed and shoved him in an effort to get free. Harris did not permit her to leave and then raped her. P.D., pp. 287–302.

Later on December 13, the plaintiff reported the rape to a Morehouse co-employee and friend Adrienne Oliver, and left messages for Dr. Jack to call her. Plaintiff spoke with Dr. Jack on Monday December 16, 1991, at which time she reported the rape to him. The next day, the plaintiff saw a gynecologist at Morehouse, Dr. Beverly Taylor, albeit the plaintiff did not initially complain to Taylor that she had been raped. Dr. Jack, however, told Dr. Taylor that plaintiff had alleged that she had been raped, which prompted Dr. Taylor to ask plaintiff to see her. Plaintiff again saw Dr. Taylor (before Christmas); and on this occasion told her about the rape. Dr. Taylor referred the plaintiff to a psychological counselor at Morehouse, Dr. Garrison. P.D., pp. 322–26; 339–343.

After the rape, plaintiff's work environment became very stressful to her. She began to have headaches, nausea, a loss of appetite, and sleeplessness. She saw three therapists concerning the emotional and psychological problems she suffered as a result of the rape, and the circumstances of her employment. P.D., pp. 345–53, 358, 394.

In mid-January, 1992, Braithwaite heard from Alice Mitchell that the plaintiff was alleging that Harris had raped her. He took no action in response thereto because he did

not believe the story. Braithwaite Deposition, pp. 192–96. Neither did Braithwaite tell anyone of the rape allegation until on or about February 6, 1992 when he was approached by Dr. Sullivan about the matter. *Id.* Subsequently, Braithwaite was reprimanded in a letter from Morehouse's Executive Vice President John Maupin for failing to report the allegations of the rape in a timely manner. In that letter, Maupin wrote, *inter alia,* that Morehouse's "investigation revealed that it is likely that you heard of Ms. Simon's charge that Mr. Harris sexually assaulted her in December, 1991, and that you took no action." Braithwaite Deposition, Exh. 30.

On January 13, 1992, near the time that Braithwaite learned of the rape allegation, Braithwaite re-assigned the plaintiff to a new work location and a new supervisor; and on February 3, 1992, Braithwaite issued the plaintiff a reprimand for *inter alia,* "belligerent, insubordinate and disrespectful behavior on January 31, 1992 during a telephone conversation with me." Braithwaite Deposition, Exhs. 20, 21, 22.

The plaintiff officially reported the rape to Morehouse on February 5, 1992; and, apparently at Sullivan's urging, she filed a criminal complaint with the police on February 6. She filed a formal written grievance with Morehouse regarding the rape on February 10.

It is undisputed that the plaintiff was instructed by Braithwaite, by letter dated January 21, 1992, that the Kaiser grant under which her position was funded was expiring on March 31, 1992, and that she should contact the Human Resources office at Morehouse to explore other job openings. The plaintiff contends that prior to receiving that letter, she was led to believe, apparently by Harris, that she was not a part of the Kaiser grant, and that her job would continue even after the Kaiser grant expired. P.D., pp. 263, 285–86. It is further undisputed that at some subsequent point in February, 1992, the plaintiff took sick leave from work, and never returned to work thereafter.

resign than work for Alice Mitchell, she does not

cite to any sworn testimony to dispute it.

The defendants make no proffer as to what action Morehouse took regarding Harris. The plaintiff, however, offers evidence that on February 20, 1992, Harris was placed on administrative leave; and on April 6, 1992, he was terminated for alleged financial improprieties. Harris Deposition, Exh. 5.

The plaintiff filed a workers' compensation claim, in March or April of 1992, for the alleged injuries she sustained because of the December 13, 1991 alleged rape by Harris.[7] On February 18, 1992, plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC), complaining that between May 3, 1991 and February 10, 1992, she was sexually harassed and discriminated against because of her sex. Exhibit E to Morehouse's Motion.

After receiving her "right to sue" letter from the EEOC, the plaintiff filed the instant action on December 18, 1992. Complaint [Doc. 1]. Despite not being personally served in accordance with Fed.R.Civ.P. 4, Braithwaite filed an Answer on March 8, 1993, in which he raised the defense of insufficient process and service of process. Answer [Doc. 4]. To this date, the plaintiff has not served Braithwaite with a copy of the complaint in accordance with Fed.R.Civ.P. 4.

*PART FOUR*

### CONCLUSIONS OF LAW

1. *BRAITHWAITE IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS BASED ON THE PLAINTIFF'S FAILURE TO EFFECT PERSONAL SERVICE*

■ It is undisputed that two years and eight months after the plaintiff filed the instant lawsuit against, *inter alia,* Ronald Braithwaite, she has still failed to properly serve Braithwaite with a summons and a copy of the complaint, in accordance with Fed.R.Civ.P. 4. Braithwaite contends that such failure mandates dismissal, without

prejudice, of the plaintiff's claims against him.

The version of Fed.R.Civ.P. 4 that governed service of process at the time the Complaint was filed in the instant case [8] provided in relevant part as follows: Subdivision (c)(2)(A) provided that a summons and complaint was to be served *personally* by a nonparty adult unless one of the exceptions in subparagraphs (B) or (C) applies. One such exception authorized service by mail under (c)(2)(C)(ii), which service may be accomplished:

> by mailing a copy of the summons and of the complaint (by first class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement ... and a return envelope, postage prepaid, addressed to the sender. If no acknowledgement of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by Subdivision (d)(1) or (d)(3).[9]

Subdivision (j) provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion ...

The plaintiff attempts to show "good cause" for her failure to perfect service through the affidavit of her former attorney (until December, 1993) Georgia Kay Lord. Lord swears that in February, 1993, she mailed to Braithwaite copies of the summons and complaint, and two copies of the Notice and

---

7. It appears to be disputed whether the workers' compensation claim also addressed injuries received from Braithwaite's harassment or Harris' harassment other than the rape.

8. As this lawsuit was filed in December, 1992, and the 120 day time period for service under Rule 4 expired in April, 1993, service of process

in this case is governed by the version of Rule 4 in effect prior to the December, 1993 amendments. *See Manufacturers Hanover Trust Co. v. Ponsoldt,* 51 F.3d 938, 938 (11th Cir.1995).

9. Subdivision (d)(1) provided for personal service of individual defendants.

Acknowledgement of Service, with a self-addressed stamped envelope; that the Postal Service never returned those documents to her; and that subsequently the litigation proceeded, and the attorneys for Braithwaite never indicated that there was a problem with service on Braithwaite.

This Court is compelled to conclude that Lord's affidavit fails to show good cause for failure to serve Braithwaite. Under former Rule 4, upon not receiving an acknowledgement of service from Braithwaite within 20 days, the plaintiff's attorney was then obliged to personally serve the defendant, even though the defendant may have been obliged to pay the costs thereof. Fed.R.Civ.P. 4(c)(2)(D) (prior to 1993 amendments). There is no evidence that Ms. Lord attempted to serve Braithwaite personally or in any other manner provided for under Rule 4 or state law. *Compare Manufacturers Hanover Trust, supra,* 51 F.3d at 940–41. Nor is there evidence that Lord's successor, the plaintiff's current attorney, attempted to do the same. And during this time, the defendant's March 8, 1993 Answer did, in fact, put the plaintiff on notice and specifically raised the defense of insufficient service of process.

Hence, the plaintiff has failed to present good cause for her failure to perfect service at any time between March, 1993 and the present, a period of over two years. Under such circumstances, the Eleventh Circuit decision in *Schnabel v. Wells,* 922 F.2d 726 (11th Cir.1991) compels this Court to conclude that the plaintiff's claims against Braithwaite must be dismissed without prejudice. Such an outcome is mandated under Fed.R.Civ.P. 4 and *Schnabel* even if the applicable Georgia state statute of limitations bars the plaintiff from renewing the claims against Braithwaite. *Schnabel, supra,* 922 F.2d at 729.[10]

Therefore, Braithwaite is entitled to summary judgment on all three state claims pending against him.

**10.** This Court offers no opinion as to whether the plaintiff's state law claims against Braithwaite

**2. DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S HOSTILE ENVIRONMENT SEXUAL HARASSMENT CLAIM AGAINST MOREHOUSE**

(a) *The plaintiff's claims are not time-barred*

Title VII requires that parties aggrieved by discriminatory acts file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory employment practice. 42 U.S.C. § 2000e–5(e). Thus, in order for a charge to be timely filed, the plaintiff was obliged to allege the commission of at least one discriminatory act which occurred within 180 days immediately preceding the day she filed her EEOC charge. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Wright v. Revere Copper and Brass, Inc.,* 836 F.2d 505, 507 (11th Cir.1988). In a sexual harassment case, the plaintiff must allege the commission of at least one incident of harassment which is a part of a continuing pattern of harassment, and which occurred within 180 days immediately preceding the filing of the EEOC charge. *See Waltman v. International Paper Co.,* 875 F.2d 468, 474–475 (5th Cir.1989).

This Court is compelled to conclude that the plaintiff has done so. Indeed, she had alleged, *inter alia,* that she was sexually assaulted on December 13, 1991 in the workplace. The plaintiff filed her EEOC charge well within 180 days thereof, on February 18, 1992.

Accordingly, defendants' claim that this complaint is time-barred is without merit.

(b) *The plaintiff has created a disputed issue of material fact regarding the severity of harassment and whether Morehouse was aware of it and failed to take remedial action*

To establish a successful claim of hostile environment sexual harassment against an employer under Title VII, a plaintiff must show: (1) she belongs to a protected class;

are preserved under O.C.G.A. § 9–2–61(a).

(2) she was subjected to unwelcome sexual harassment by a co-worker and/or supervisor; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a "term, condition, or privilege of employment;" and (5) respondeat superior (i.e. the employer knew or should have known of the conduct of the harasser(s) and failed to take prompt remedial action). *Henson v. City of Dundee*, 682 F.2d 897, 903–905 (11th Cir.1982).

■ The standard for determining whether the harassment affected a term, condition or privilege of employment amounts to a two-part test: The harassment must be "sufficiently severe or pervasive" to create (1) a work environment that a reasonable person[11] would find hostile or abusive; and that (2) the employee actually found to be hostile or abusive. *Harris v. Forklift Systems, supra,* 510 U.S. at ——, 114 S.Ct. at 370, 126 L.Ed.2d at 301–02.

■ In order to show the existence of a hostile or abusive work environment, Title VII does not require that the aggrieved employee suffer a nervous breakdown. Neither is it necessary that a hostile or abusive workplace violative of Title VII create a psychological injury, although the presence of such an injury is clearly a factor which can be considered. Rather, Title VII requires that the adjudicator look at:

all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like

any other relevant factor, may be taken into account, no single factor is required. *Harris, supra,* 510 U.S. at —— ——, 114 S.Ct. at 371, 126 L.Ed.2d at 302–303. It is also clear that:

'mere utterance of an ... epithet which engenders offensive feelings in an employee' ... does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.

*Harris v. Forklift Systems,* 510 U.S. at ——, 114 S.Ct. at 370, 126 L.Ed.2d at 302 (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

■ Morehouse contends that the plaintiff has not established that the harassment was sufficiently severe or pervasive to state a claim; and that if the harassment was sufficiently severe or pervasive, Morehouse took prompt, remedial action once it learned of it.

■ Through her deposition testimony, the plaintiff has established that she was subjected to unwelcome sexual harassment based on sex from Harris[12] and Braithwaite, including unwanted touching, lewd and vulgar comments, sexual advances, and a sexual assault. She has also established (1) that she subjectively found the harassment to be so severe as to make her work environment hostile and abusive; and (2) that a reasonable person would have found the harassment equally severe. Indeed, although it may be argued whether the harassment in the instant case was pervasive or frequent enough to meet the governing standard, this Court is compelled to conclude that the allegation of a rape in the workplace, even if it

---

**11.** The Supreme Court, in *Harris v. Forklift Systems,* 510 U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), did not explicitly reject or adopt a different standard for female plaintiffs (i.e. "a reasonable woman" standard) which was adopted by the Ninth Circuit in *Ellison v. Brady,* 924 F.2d 872 (1991). However, this Court infers from the Supreme Court's use of the term "reasonable person" that the standard under *Harris*

does not take into account unique attributes and perspectives of women in the workplace.

**12.** Although the plaintiff acceded to Harris' sexual advances in April, 1993, such does not mean that she welcomed them. In fact, she testified that she did not. In addition, after April, 1993, she stopped acceding to the sexual advances and strongly objected to them.

stood alone, would be sufficiently *severe* to meet the standard the Supreme Court set forth in *Harris v. Forklift Systems, supra.*[13] *See Watts v. N.Y.C. Police Dept.,* 724 F.Supp. 99, 105 (S.D.N.Y.1989).

This Court is further compelled to conclude that the plaintiff has at least raised a disputed issue as to whether the defendant Morehouse can be held liable for the sexually harassing conduct alleged. Indeed, the plaintiff repeatedly reported Harris' improper sexual conduct, including the sexual assault, to Dr. Jack, who was until October, 1991, her supervisor. In addition, she reported Harris' conduct prior to the assault to Braithwaite in May, 1991; and there is evidence which creates a disputed issue of fact as to whether Braithwaite knew of the December, 1991 sexual assault as early as mid January, 1992. Further, the overall record indicates that Harris engaged in frequent and non-discrete sexual advances toward the plaintiff, and that such advances were the subject of rumors throughout the workplace. Based thereon, and drawing every reasonable inference in favor of the non-moving party (the plaintiff), this Court is compelled to conclude that a finder-of-fact could conclude that Harris' (and Braithwaite's) treatment of the plaintiff either was apparent to management or should have been apparent to management. *See Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Mills v. Amoco Performance Products, Inc.,* 872 F.Supp. 975 (S.D.Ga. 1994); *Cummings v. Walsh Construction Co.,* 561 F.Supp. 872, 878 (S.D.Ga.1983).

As to whether the defendant took prompt, remedial action, Morehouse has only presented evidence that Braithwaite admonished Harris at the June, 1991 meeting to keep personal conflicts out of the workplace and stop the harassment; and that after the plaintiff "formally" reported the rape on February 6, 1992, it conducted an investigation. Morehouse has not presented any evidence that it in any way reprimanded or disciplined

or even transferred Harris before or after the alleged assault of the plaintiff. Furthermore, the defendant has not presented evidence of the results of its investigation of the alleged rape. Finally, Morehouse has not even presented evidence that it has a policy prohibiting sexual harassment in the workplace.

Under such circumstances, this Court is compelled to conclude that Morehouse failed to prove that it took prompt remedial action. Accordingly, a finder of fact could conclude that Morehouse is liable for hostile environment sexual harassment under Title VII of the Civil Rights Act of 1964, as amended.[14]

3. *DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF CONSTRUCTIVE DISCHARGE*

In January, 1992, the plaintiff received notice that the funding for her position was ending, that her job was ending, and that she should contact the human resources office to explore other job opportunities. However, due to the stress caused by, *inter alia,* the sexual assault, she went on sick leave in February, 1992 and never returned. As she was thereby unable to explore other job opportunities and retain employment at Morehouse, the plaintiff complains that she was constructively discharged because of her sex.

In order to establish employer liability for a constructive discharge, the plaintiff must establish: (1) that a reasonable person in the plaintiff's position would have found the working conditions intolerable; (2) that the conduct that constituted a Title VII violation against the plaintiff created the intolerable working conditions; and (3) that the plaintiff's involuntary resignation resulted from the intolerable working conditions. *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir. 1993); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir.1989); *Ugalde*

13. In this regard, it is critical to point out that the standard under *Harris* requires the offending conduct to be sufficiently severe *or* pervasive (emphasis added), not both.

14. As a continuing violation which spanned beyond November 21, 1991, this sexual harassment case is governed by the provisions of the Civil Rights Act of 1991, including the right to a jury trial.

*v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239 (5th Cir.1993).

This Court is compelled to conclude that the allegation of a sexual assault, in combination with the sexual advances made by Harris, creates a disputed issue of material fact as to whether the plaintiff's working conditions were so intolerable as to compel her to go on sick leave and resign. *See Morgan v. Ford, supra,* 6 F.3d at 755–56.

4. *THE PLAINTIFF'S STATE LAW CLAIMS ARE NOT BARRED BY THE EXCLUSIVITY PROVISION OF THE GEORGIA WORKERS' COMPENSATION STATUTE*

 Morehouse contends that all of the plaintiff's state law claims for damages arising out of the alleged rape by Harris and the sexual harassment by Harris and Braithwaite are barred by the exclusivity provision of the Georgia workers' compensation statute, O.C.G.A. § 34–9–11 ("the Act").[15] An injury recompensable under the Act, and therefore barred in a civil lawsuit, must be an "injury by accident arising *out of and in the course of employment* ... and shall not include injury caused by the willful act of a third person directed against an employee for reasons personal to such employee." (emphasis added) O.C.G.A. § 34–9–1(4). The Georgia courts have additionally held that in order to be compensable under the Act, the injury must be a physical injury or harm; or, if it is a psychological injury, it must arise from a physical injury or event. *Hanson Buick, Inc. v. Chatham,* 163 Ga.App. 127, 292 S.E.2d 428, 429–30 (1982); *Burbank v. Mutual of Omaha Ins. Co.,* 484 F.Supp. 693 (N.D.Ga. 1979), *aff'd without opinion,* 616 F.2d 565 (5th Cir.1980); *Georgia Bureau of Investigation v. Worthington,* 149 Ga.App. 628, 255 S.E.2d 99 (1979).

While this Court agrees with Morehouse that the rape by Harris, and Braithwaite's and Harris' other sexually harassing conduct arose *in the course of* their employment (i.e. at the workplace), it cannot be said that they arose *out of* the employment. Indeed, Morehouse has offered no evidence that the alleged rape or any of the harassment occurred because of, or arose out of, any work-related dispute or altercation. *See Kennedy v. Pineland State Bank,* 211 Ga.App. 375, 439 S.E.2d 106, 107 (1993); *Murphy v. ARA Services, Inc.,* 164 Ga.App. 859, 298 S.E.2d 528, 530–31 (1982); *Compare Hennly v. Richardson,* 264 Ga. 355, 444 S.E.2d 317 (1994); *Echols v. Chattooga Mercantile Co.,* 74 Ga.App. 18, 38 S.E.2d 675 (1946). The rape and the harassment can only be characterized as willful acts conducted for personal reasons.

 The Workers' Compensation Act has also been found to cover injuries caused by a felonious assault where the conditions under which the employee performs the duties of her job may be characterized as "peculiarly conducive to the eventuality which did occur" by increasing the risk of an attack. *Murphy, supra,* 298 S.E.2d at 531. This Court is compelled to conclude that employment at Morehouse Medical School does not constitute such an environment. *See Id.; Compare Helton v. Interstate Brands Corp.,* 155 Ga.App. 607, 271 S.E.2d 739, 741 (1980).

Accordingly, the injuries the plaintiff suffered as a result of the alleged rape are not barred or covered by the Act.

5. *DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

(a) *The Merits:*

 To state a *prima facie* claim of intentional infliction of emotional distress under Georgia law, the plaintiff must prove four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Bridges v. Winn–*

15. In relevant part, O.C.G.A. § 34–9–11 provides: "(a) The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, his

personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death; ..."

*Dixie Atlanta, Inc.,* 176 Ga.App. 227, 335 S.E.2d 445, 447 (1985). Georgia courts have granted summary judgment against plaintiffs who fail to present evidence which creates a disputed issue as to all of the four elements. *Gaston v. Southern Bell Tel. & Tel. Co.,* 674 F.Supp. 347, 352 (N.D.Ga.1987) (citing *Bridges, supra* and *Crowe v. J.C. Penney, Inc.,* 177 Ga.App. 586, 588, 340 S.E.2d 192 (1986)).

▮▮▮ Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law. If the evidence shows that a reasonable person might find the presence of extreme and outrageous conduct resulting in extreme emotional distress, then the question must be resolved by a jury. *Yarbray v. Southern Bell Tel. & Tel. Co.,* 261 Ga. 703, 706(2), 409 S.E.2d 835 (1991).

▮▮▮ This Court is compelled to conclude that the plaintiff has alleged conduct by Harris (i.e. the rape in combination with the sexual advances) which was intentional, extreme and outrageous; and that she has alleged sufficient facts from which a jury could conclude that she suffered extreme emotional distress as a result of the conduct. Indeed, she testified to experiencing stress, headaches, nausea, a loss of appetite, and sleeplessness; and to seeing three different therapists after the rape. Under such circumstances, this Court is compelled to conclude that disputed issues of material fact exist as to whether Harris intentionally inflicted emotional distress upon the plaintiff. *See Yarbray, supra,* 409 S.E.2d at 838; *Cummings v. Walsh Construction Co., supra,* 561 F.Supp. at 882; *Davis v. Copelan,* 215 Ga. App. 754, 452 S.E.2d 194, 203 (1994).

### (b) *Respondeat Superior*

The plaintiff seeks to hold the defendant Morehouse, Harris' employer, liable for the acts of Harris under the doctrine of *respondeat superior.*

O.C.G.A. § 51-2-2 provides that "Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."

'In determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.'

*Southern Bell Tel. & Tel. Co. v. Sharara,* 167 Ga.App. 665, 307 S.E.2d 129, 131 (1983) (quoting *McGhee v. Kingman & Everett, Inc.,* 49 Ga.App. 767(2), 176 S.E. 55 (1934)).

As with this Court's analysis of whether the plaintiff's claim is barred under the Workers' Compensation Act, the fact that the assault by Harris and all the other sexually harassing conduct took place at the workplace and during work hours is not dispositive on the question of scope of employment. *Sharara, supra,* 307 S.E.2d at 131. As previously noted, the assault and the sexually harassing conduct were personal acts which did not arise out of the employment. *Id.;* *See also Rogers v. Carmike Cinemas,* 211 Ga.App. 427, 439 S.E.2d 663, 665 (1993); *Favors v. Alco Mfg. Co.,* 186 Ga.App. 480, 482–83, 367 S.E.2d 328, 333 (1988).

▮▮▮ However, under Georgia law, there is an alternative basis for imposing *respondeat superior* liability against Morehouse, to wit: "[If] an employer who possesses or is possessed of knowledge of the employee's behavior ... fails to correct such conduct[,] ... [it] essentially ratifies his employee's acts," and may be held liable therefor. *Cummings, supra,* 561 F.Supp. at 879–80; *Allen & Bean, Inc. v. American Bankers Ins. Co.,* 153 Ga.App. 617, 619, 266 S.E.2d 295 (1980). As previously noted, the plaintiff has created a disputed issue of fact as to (1) whether Morehouse knew or should have known of Harris' and Braithwaite's harassment (other than the rape) as the incidents were happening, and failed to take corrective action; and (2) whether it knew or should have known of the rape very soon after it happened and failed to take any corrective action at all.

As the question of whether Morehouse may be held liable for the acts of Harris and Braithwaite does not present a "plain and

undisputable" case, this Court is compelled to conclude it is a question which must be preserved for the jury. *See Cummings, supra,* 561 F.Supp. at 880; *West Point Pepperell, Inc. v. Knowles,* 132 Ga.App. 253, 256, 208 S.E.2d 17 (1974).

6. *DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF INVASION OF PRIVACY*

(a) *The Merits*

Georgia law recognizes four distinct torts under the general rubric of invasion of privacy, to wit: (1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Cabaniss v. Hipsley,* 114 Ga.App. 367, 151 S.E.2d 496 (1966); *See also Pavesich v. New England Life Insurance Company,* 122 Ga. 190, 50 S.E. 68 (1905). In the instant case, the plaintiff complains of an intrusion upon her seclusion and solitude by the conduct of Harris and Braithwaite.

In *Yarbray, supra,* the Court summarized the tort as follows:

The 'unreasonable intrusion' aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns. *Prosser & Keeton on Torts,* § 117 at pp. 855–856 (5th ed. 1984). *See also* Adams & Adams, *Georgia Law of Torts* (1989) § 29–3 at pp. 342–343. 'Highly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy.' Keeton, *Prosser & Keeton on Torts, supra,* at p. 121 (Supp.1988).

409 S.E.2d at 837.

Prior to *Yarbray,* the Georgia Court of Appeals held in several cases that, to state a claim under the "unreasonable intrusion" tort, the plaintiff must allege a physical intrusion which is analogous to a trespass. *See Hines v. Columbus Bank and Trust Company,* 137 Ga.App. 268, 223 S.E.2d 468, 470 (1976).

In the instant case, the plaintiff has alleged more than simply highly personal demands (i.e. sexual advances in the workplace). She has also alleged an unwanted physical intrusion by contending that Harris raped her. Accordingly, the plaintiff has alleged sufficient facts from which a jury could find that Harris committed an unreasonable intrusion upon the plaintiff's seclusion. *Compare Cummings, supra,* 561 F.Supp. at 884; *See Summers v. Bailey,* 55 F.3d 1564 (11th Cir. 1995).

(b) *Respondeat Superior*

For the reasons stated previously in assessing respondeat superior liability as to the intentional infliction of emotional distress claim, this Court is compelled to conclude that a jury question is raised as to whether Morehouse should be held liable for the actions of its employee in intruding upon the plaintiff's seclusion. Specifically, a disputed fact exists as to when Morehouse learned of the rape, and whether it failed to take corrective action as a consequence.

7. *DISPUTED ISSUES OF MATERIAL FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM OF NEGLIGENT RETENTION AND SUPERVISION*

The plaintiff further contends that Morehouse is directly liable for her injuries resulting from the rape because it negligently retained Harris in its employment despite its knowledge, prior to the rape, that he had violent and/or criminal propensities. *See Mountain v. Southern Bell Tel. & Tel. Co.,* 205 Ga.App. 119, 421 S.E.2d 284, 286 (1992).

An employer commits the tort of negligent retention when a plaintiff is injured by an employee, and the employer had retained that employee despite the employer's knowledge of the employee's violent or criminal propensities. *See e.g. Kemp v. Rouse–Atlanta, Inc.,* 207 Ga.App. 876, 878, 429

S.E.2d 264 (1993), *cert. denied* (1993); *Southern Bell Tel. & Tel. Co. v. Sharara, supra.*

■ In the instant case, long after the plaintiff terminated her consensual sexual relationship with Harris, Harris made strongly-worded sexual advances toward the plaintiff, which the plaintiff rejected. In conjunction with his sexual advances, Harris once forcefully prevented the plaintiff from driving away from the work place; and on another occasion, yelled at the plaintiff in her office so loudly that several employees were prompted to investigate what was happening. Moreover, the plaintiff reported all of Harris' offensive acts to her supervisor and others. Under such circumstances, this Court is compelled to conclude that the plaintiff has created a disputed issue of material fact as to whether Morehouse had advance knowledge that Harris had a tendency to commit a violent sexual assault of the plaintiff, and improperly retained him nonetheless. *See Newsome v. Cooper–Wiss, Inc.,* 179 Ga.App. 670 673, 347 S.E.2d 619 (1986); *Cox v. Brazo,* 165 Ga.App. 888, 889, 303 S.E.2d 71 (1983).

Accordingly, summary judgment on this claim must also be denied.

### 8. *Conclusion*

IT IS, THEREFORE, RECOMMENDED that Ronald Braithwaite's Motion for Summary Judgment be GRANTED, and that Morehouse's Motions for Summary Judgment be DENIED.

### *ORDER*

If the District Court's Order adopting and/or reversing the instant Report and Recommendation leaves issues to be tried before the undersigned, it is HEREBY ORDERED that within 30 days of the issuance of that Order, the parties file their Consolidated Pretrial Order with this Court.

IT IS SO RECOMMENDED AND ORDERED.

This 27th day of July, 1995.