In the Matter of the Claim of WILLIAM LORER, Respondent, against GOTHAM CONCRETE & CEMENT FINISH CORP., Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, June 9, 1959.

*Thomas Cartelli* for appellant.

*Saminsky, Olin & Stern* for claimant-respondent.

*Tucker & Bisselle* for Employers Mutual Liability Insurance Co., respondent.

*Ralph S. Stowell* for Hillman Housing Corp. and another, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

HERLIHY, J.  The employer, Gotham Concrete & Cement Finish  Corp., appeals from a decision of the board which discharged from liability its carrier, Employers Mutual Liability Insurance Company, and found it solely liable to the claimant as a noninsured employer.  The Referee had previously found that the insurance carrier's policy covered the employer.

The appeal is also from a finding that the Hillman Housing Corp. was an owner-builder rather than a general contractor.

The employer had what was referred to in the record as the Delancey Street job where the claimant, an employee, was injured on November 26, 1952.  The said employer was a subcontractor, having agreed with Hillman Housing Corp. to do concrete work on a garage being constructed on land owned by Hillman.

The employer had an insurance compensation policy with the Employers Mutual Liability Insurance Company [hereinafter referred to as the carrier] covering certain specified jobs and " elsewhere in the State of New York ". The carrier claims to have received a request from the broker of the employer in October of 1952 to change the terms of the coverage restricting it to a Brooklyn College job " and not elsewhere ", which indorsement was to become effective October 19 but was not dated until November 24, 1952 [two days before the accident] and was thereupon mailed to the employer. There was conflicting evidence concerning the alleged policy change, resulting in the Referee finding for the employer and afterwards reversed by the action of the board. While the record is far from being complete, it could possibly be said that there was substantial evidence to sustain the finding of the board as a matter of fact.

We are concerned with a question of law as to the rights of an insurance company after the issuance of a policy, by way of indorsement, to change it so that in effect it constitutes a partial cancellation. The manner of cancellation of a workmen's compensation policy is governed by subdivision 5 of section 54 of the Workmen's Compensation Law which provides that no contract of insurance " shall be cancelled " before its expiration and until " at least ten days after " a notice of cancellation, giving the date thereof, shall be filed in the office of the chairman of the Workmen's Compensation Board and notice served on the employer.

It is conceded that the provisions of the statute were not complied with, the insurance carrier contending that it applies only to cancellations of a policy in its entirety. It is also apparent from an examination of the various dates that the company had ample time to give the required notice.

The testimony disclosed that at the time of the amendment the employer had five jobs and if the contention of the carrier was correct, it meant that four jobs of the employer were uninsured. It is generally understood the interpretation of an insurance policy will be construed strictly against the carrier and in favor of the insured. It was undoubtedly of convenience to the carrier that the policy was written as described rather than a separate policy for each project but in our opinion, the change in the terms of the policy was a cancellation. The manner in which the carrier elects to write coverage (single or multiple policies) is not controlling. It was therefore governed by subdivision 5 of section 54 of the law.

The primary purpose of the Workmen's Compensation Law is to protect the employee. If we were to adopt the theory recommended by the carrier, it would open the door to fraud, deceit and misrepresentation to the detriment of employee and contrary to the purpose of the law. The employer could obtain a policy with a schedule for five different jobs and immediately after the effective date notify the carrier to cancel one or more of the jobs without giving the required notice to the office of the chairman of the board. Larson, in his publication on Workmen's Compensation Law (Vol. 2, § 92.20) described it as follows: " Compensation insurance, however, has come to be an integral part of the compensation system; and the ultimate object of that system is the assurance of appropriate benefits to employees. The insurance carrier therefore stands in two relations; to the employer, to protect him from the burden of his compensation liability, *and to the employee, to ensure that he gets the benefits called for by the statute.* The former relation is governed largely by the insurance contract; *the latter is governed by statute.*" [Emphasis supplied.]

In *Matter of Otterbein* v. *Babor & Comeau Co.* (272 N. Y. 149, 153–154) the court said that the purpose of the section " is to afford to the Commissioner an opportunity to see that new insurance is provided in the place of the canceled insurance and thereby afford protection to employees."

And again at page 154: " The statute applies as well to cases where the attempted cancellation is at the request of the employer or by agreement between the employer and carrier. Notice of cancellation must be given to the Commissioner in all cases in order to make an attempted cancellation effective * * *. When a cancellation is attempted, the obligation rests upon the carrier to give the statutory notice if it is to be exempt from liability under its policy." (See *Matter of Horn* v. *Malchoff*, 276 App. Div. 683, 684, 685; *Matter of Moss* v. *P. A. Trucking Co.*, 284 App. Div. 675, 677.)

While there is no case in this State as to whether a partial cancellation constitutes cancellation within the meaning of section 54, under strikingly similar facts it was held elsewhere that such an attempt required notice to the commissioner. In *Maryland Cas. Co.* v. *Johnson* (134 Okla. 174 [the wording of the compensation statute is almost identical]) an attempt was made to strike from the policy the insurance on the employees working on one special contract [policy covered several construction jobs] and it was held that it was in effect an attempt to cancel a contract of insurance, and could not be effected

without having complied with the law with reference to the giving of notice to the commission.

Regardless of what phraseology may be used, " cancellation, change, amendment, rider or endorsement ", what actually took place in the instant case was a cancellation of insurance coverage for the protection of employees working on the so-called Delancey job, and it could not become effective until the carrier strictly complied with the requirements of the statute and admittedly, this it did not do.

As to that part of the appeal from a finding that Hillman Housing Corp. was an owner-builder rather than a general contractor, there is evidence to sustain the finding of the board.

The decision and award of the Workmen's Compensation Board should be reversed and the matter remitted to the board.

FOSTER, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Decision and award reversed, without costs, and matter remitted to the board.