Rivera, J.
(dissenting). I agree that the Workers’ Compensation Board acted within the scope of its statutory authority under the Workers’ Compensation Law in adopting regulations incorporating a list of pre-authorized medical procedures, and a system for implementing consideration of treatment recommendations not included on the list. However, the Board *470 exceeded its authority when it promulgated regulations imposing a preapproval requirement that forecloses reimbursement for medical services that vary from the list and the Board’s Medical Treatment Guidelines (Guidelines) in all cases where the services are rendered in advance of approval. Also, to the extent the Board’s regulations establish a variance scheme that predetermines that all treatment not included on the preauthorized list of services is presumptively not medically necessary, it imposed a burden on Kigin and other claimants inconsistent with the statute’s language and underlying purpose. Therefore, I would reverse the Appellate Division.
The Workers’ Compensation Law “is framed on broad principles for the protection of [workers]” (Matter of Waters v Taylor Co., 218 NY 248, 251 [1916]; accord Matter of Illaqua v Barr-Llewellyn Buick Co., 81 AD2d 708, 708 [3d Dept 1981], citing Matter of Heitz v Ruppert, 218 NY 148, 154 [1916], and Matter of Lorer v Gotham Concrete & Cement Finish Corp., 8 AD2d 221, 224 [3d Dept 1959]), and thus “should be construed liberally in favor of the employee” (Matter of Wolfe v Sibley, Lindsay & Curr Co., 36 NY2d 505, 508 [1975]). It is beyond dispute that the Board has broad regulatory power to administer and carry out the mandates of the Workers’ Compensation Law (see e.g. Workers’ Compensation Law §§ 117 [1]; 141). To that end, the Board is authorized to “adopt reasonable rules consistent with and supplemental to” the statutory scheme (id. § 117 [1]). However, the Board’s powers are not limitless, and we review its “administrative regulations to determine whether they are rational and to ensure that they are not arbitrary or capricious” or contrary to the statute under which they are promulgated (Matter of Belmonte v Snashall, 2 NY3d 560, 567 [2004]; see Kuppersmith v Dowling, 93 NY2d 90, 96 [1999]).
The Workers’ Compensation Law states that employers “shall be liable for the payment of’ and “shall promptly provide for an injured employee” medical treatment “for such period as the nature of the injury or the process of recovery may require” (Workers’ Compensation Law § 13 [a]). Prior to the Board’s regulatory adoption of the Guidelines in 2010, where an employer or carrier disputed a request for treatment reimbursement, the parties resolved the dispute pursuant to an individualized determination of whether the request is compensable after treatment was rendered to the claimant (see Matter of Kigin v State of N.Y. Workers’ Compensation Bd., 109 AD3d 299, 306 [3d Dept 2013], citing Workers’ Compensation Law §§ 13-g, 13-k, *471 13-l, 13-m, Matter of Spinex Labs. [Patton], 213 AD2d 884, 885 [3d Dept 1995], and Employer: Livingston County, 2011 WL 5618432, *5, 2011 NY Wrk Comp LEXIS 6751, *15-16 [WCB No. 7990 5338, Nov. 9, 2011]; see also 110 NY Jur 2d, Workers’ Compensation § 565 [after treatment is rendered, employer must pay or give written notice of the reasons for nonpayment]). Only in certain cases where the claimant sought treatment in the form of “specialist consultations, surgical operations, physiotherapeutic or occupational therapy procedures, x-ray examinations or special diagnostic laboratory tests costing more than [$500]” was the provider required to obtain preauthorization for the treatment from the employer or Board in order to obtain reimbursement (Workers’ Compensation Law § 13-a [5]). A denial of pre-authorization under this section must be based on “a conflicting second opinion rendered by a physician authorized by the board” (id,.).
As part of the legislative efforts to streamline compensation for workers’ injuries and increase benefits for injured workers while reducing costs, in 2007, the legislature amended section 13-a (5) by raising the threshold cost of services requiring preauthorization to $1,000 and directing the Board to “issue and maintain a list of pre-authorized procedures” (Workers’ Compensation Law § 13-a [5]; L 2007, ch 6, § 28). Pursuant to this legislative mandate and at the direction of the executive branch, the Board promulgated regulations that incorporated the Guidelines developed by various medical experts, and which served as a basis for the list of pre-authorized procedures. The Board then promulgated regulations that implemented a regulatory scheme whereby reimbursement for medical services would be subject to the Guidelines. All of this was well within the Board’s power and in furtherance of the statute.
The Board went awry when it promulgated regulations that imposed a variance scheme that requires preapproval for reimbursement requests related to treatment that varies from the Guidelines. Section 324.3 of the Board’s regulations states that a variance for medical care that varies from the Guidelines “must be requested and granted . . . before [that care is] provided to the claimant” (12 NYCRR 324.3 [a] [1]). Nothing in the language of the statute limits compensation to care approved in advance of treatment unless the pre-authorization requirement of section 13-a (5) applies, and there is no claim that it does here. Thus, the regulation’s preapproval requirement lacks a necessary textual grounding to the extent that it *472 extends the limited pre-authorization requirement of section 13-a (5) to care beyond that specifically enumerated in that section of the statute. Indeed, it is undisputed that prior to implementation of the regulations, disputes over reimbursement for medical services other than those in section 13-a (5) were usually resolved after the services had been provided.
In this regard, the Board’s regulations also undermine the purpose of the 2007 amendments “to remove impediments to prompt diagnostic and treatment measures” (see Governor’s Program Bill Mem No. 9 at 5, Bill Jacket, L 2007, ch 6). The regulations instead serve to hinder timely medical service delivery by denying payment to providers who fail to secure preapproval. Under the regulations, “a request for a variance will not be considered if the medical care has already been provided” (12 NYCRR 324.3 [a] [1]). As a result, the preapproval requirement incentivizes providers to delay treatment based on financial concerns. Realistically, providers will defer medical care until they are certain of reimbursement, which under the regulations means until a variance is granted. How long this may take is uncertain, and dependent upon the deliberateness of the administrative process. Such delay carries with it the potential for significant adverse health consequences due to a break in medical services. In contrast, the statute expressly provides ensured compensation for medically necessary services, making no mention of whether treatment was rendered prior to approval. The Board’s regulations would permit denial of reimbursement even for medically necessary treatment simply because the medical services were provided prior to preapproval. As a consequence, the regulations are inconsistent with the mandate of section 13 (a).
The Board is also subject to challenge for interpreting its regulations so as to deny Kigin’s request for reimbursement on the ground that her treatment varied from the Guidelines. This interpretation contravenes the statutory and regulatory scheme for individual assessment of compensable injuries, and was not mandated by the 2007 amendments.
Although I agree with the majority that the claimant had the burden to establish that the treatment was compensable under the statute (see majority op at 468), under the Board’s interpretation of the regulations the claimant is subject to an adverse presumption that the requested services are not medically necessary simply because they are not included on the preauthorized list and vary from the Guidelines.
*473 The Board argues, and the majority concludes, that the legislature’s directive to create a list of pre-authorized procedures also means that the Board has the authority to predetermine that all excluded services are not medically necessary. I disagree. The more logical and reasonable interpretation of the statutory language, and one which furthers the 2007 amendments’ purpose to increase benefits to workers, is that the legislature authorized the Board to predetermine procedures over which there was general medical consensus, leaving claims regarding other medical services to the preexisting dispute resolution process. That process is better suited to determinations focused on the individual’s condition and needs. Conversely, the rule-making process is more appropriate to pronouncements of generalized treatment protocols, without consideration of specific individualized health concerns (see State Administrative Procedure Act § 102 [2] [a] [i] [defining a “rule” as “the whole or part of each agency statement, regulation or code of general applicability that implements or applies law” (emphasis added)]; see also Matter of Alca Indus. v Delaney, 92 NY2d 775, 778 [1999] [discussing distinction between rulemaking and “ad hoc decision making based on individual facts and circumstances”]).
The statutory language does not support the Board’s position that the variance process established by the regulations is consistent with the preexisting statutory scheme. The source of the Board’s authority for the Guidelines, section 13-a (5), merely states that the Board “shall issue and maintain a list of preauthorized procedures.” It does not state that excluded procedures are to be treated as presumptively not medically necessary. Since the Guidelines were adopted pursuant to the exercise of the Board’s rule-making power, the Board’s interpretation of the statute would permit the regulations to supplant the individualized assessment of medical necessity by establishing a presumption against certain services. We would expect that such a dramatic departure from the prior statutorily established case-by-case approach would be authorized by clear, unambiguous language.
Moreover, the Board’s interpretation favors the legislative goal to reduce costs to the detriment of the legislative goal to increase benefits to workers. Under the Board’s approach, the claimant faces a previously unknown burden to rebut a presumption against payment for certain medical services, and must endure the physical and mental effects of delays in service pending the outcome of the variance request. This appears to be *474 in furtherance of cost reduction for its own sake, for it increases the challenges faced by claimants rather than “remov[ing] impediments to prompt diagnostic and treatment measures” (Governor’s Program Bill Mem No. 9 at 5). Conversely, both goals are achievable by the adoption of a pre-authorized list which expedites treatment delivery without automatically labeling certain medical care medically unnecessary, thus increasing benefits for workers, and at the same time reducing the number of claims and parties subjected to the dispute and variance process, thus containing costs.
The statutory presumption in favor of claimants applicable to proceedings to enforce claims for compensation, found in section 21 (5), illustrates the legislative commitment to reducing the burdens faced by claimants in securing benefits, and further supports the conclusion that the Board’s interpretation is contrary to the statute and the legislative intent. Section 21 (5) states that in any proceeding to enforce a claim for compensation
“it shall be presumed in the absence of substantial evidence to the contrary ...”
“ . . . [tjhat the contents of medical and surgical reports introduced in evidence by claimants for compensation shall constitute prima facie evidence of fact as to the matter contained therein.”
No such presumption applies to the carrier/employer’s medical evidence.
The presumption clearly indicates the legislature’s intention to ease the claimant’s burden of establishing a right to reimbursement for treatment. The Board’s interpretation undermines that intent because it requires the claimant to establish by facts and opinion that the treatment is medically necessary, without benefit of the fact presumption, and it eliminates the carrier/employer’s burden to rebut the presumption with substantial evidence to the contrary.
Here, the Board determined that Kigin’s medical provider failed to establish that the request for compensation for additional acupuncture treatments was medically necessary. That determination, however, was based on the independent medical examination and report of Dr. Chiu, who concluded that the treatments were not medically necessary because Kigin was not disabled and the treatments failed to comply with the Guidelines. This was error, as the Board had previously classified *475 Kigin as permanently partially disabled, and Dr. Chiu should have evaluated the services not as against generalized Guidelines of pre-authorized treatment, but based on the medical care’s impact on Kigin’s conditions and needs.
I dissent.
Judges Read, Smith and Abdus-Salaam concur; Judge Rivera dissents in an opinion in which Chief Judge Lippman and Judge Graffeo concur.
Order affirmed, with costs.